TUTHILL *vs.* WHEELER.

In March 1845, the plaintiff entered into a contract with the D. and H. Canal
Co., whereby he agreed *to take charge of, and navigate*, a boat, during the
season, in conformity with the orders and directions of the company, and to
hold himself accountable to them for any injury done to the boat.    The
company agreed to pay for every ton of coal delivered at R., by the boat, cer-
tain stipulated prices, reserving $8 on each trip, towards the payment of the
value of the boat, and when the sums so reserved should amount to $225 and
interest, a title was to be given to the plaintiff, for the boat.    But in case of
failure to pay for the boat, as stipulated, or the termination of the agreement
by the company whilst the value of the boat, and the interest, remained unpaid,
then the sums reserved were to accrue to the company *for the use of the boat.*
The company also reserved the right *to terminate the agreement, at pleasure*,
and to take the absolute possession of the boat, &c.    Under this contract, the
plaintiff ran the boat through the season, and then laid it up in the canal;
having paid $136 towards the purchase of the same.    The boat, while thus laid
up, being levied upon by a tax collector, and sold, as the property of the D. and
H. Canal Company; *Held* that the plaintiff had not such an interest in the boat
as would enable him to maintain an action of trover therefor, against the col-
lector.
To enable a person to maintain an action of trover by virtue of a special property
in the thing taken, he must have an absolute vested interest in it.

THIS was an action of trover to recover the value of a canal
boat.    It was tried at the Sullivan circuit, in September, 1846,
before BARCULO, Circuit Judge.    It appeared upon the trial
that on the 1st day of March, 1845, the plaintiff entered into a
contract with the Delaware and Hudson Canal Company,
whereby he agreed *to take charge of, and navigate* the boat in
question, during the season of navigation, in conformity with
the orders and directions of the company, and to hold himself
accountable to the company for any injury done to the boat.
The company, on their part, agreed to pay for every ton of coal
delivered at Rondout by the boat, certain stipulated prices, re-
serving eight dollars on each trip of the boat towards the pay-
ment of the value of said boat, and when the sums so reserved
should amount to $225 and the interest thereon, a title was to

Tuthill *v.* Wheeler.

be given to the plaintiff for the boat; but in case of failure to pay for the boat, as stipulated, or the termination of the agreement by the company, whilst the value of the boat and the interest remained unpaid, then the sums reserved were to accrue to the company *for the use of the boat.* The company also reserved the right *to terminate the agreement at pleasure*, and to take the absolute possession of the boat, and to transport it with the cargo on board, to its place of destination, at the plaintiff's expense. Under this contract the plaintiff ran the boat through the season, and at the close of navigation laid it up in the canal, in the town of Lumberland. He had paid during the season, towards the purchase of the boat, $136. The defendant was collector of the town of Lumberland, and as such collector held a tax warrant, by virtue of which he was directed to collect of the Delaware and Hudson Canal Company $969, for the tax assessed upon that part of their canal, within the town of Lumberland; and by virtue of such warrant, the defendant levied upon, and on the 27th of February, 1846, sold the boat in question.

The plaintiff having rested, upon this evidence, the defendant moved for a nonsuit, upon two grounds. 1. That the plaintiff, at the time of the seizure and sale of the boat, had no such property in the boat as would enable him to maintain his action of trover; and 2. That at the time of the seizure and sale, the boat was in the actual possession of the company and was therefore liable to be seized and sold for the tax mentioned in the warrant. The circuit judge decided that the plaintiff could not maintain the action, and directed a nonsuit to be entered; which the plaintiff moved to set aside.

*J. W. Brown*, for the plaintiff.

*G. W. Lord,* for the defendant.

*By the Court*, HARRIS, J. The agreement between the Delaware and Hudson Canal Company and the plaintiff can scarcely be considered as amounting even to a conditional sale

of the boat. The plaintiff, it is true, was to take *charge of, and navigate* it during the season, but he was to do so, in conformity with the orders and directions of the company, and in every respect, was to act as their servant. They reserved the right to discharge him from their employment at pleasure, and to resume the absolute possession of the boat ; and in that case, they were not even to be accountable for the $8 per trip, retained under the agreement. At the most, there was but a contract for a future sale, in case the plaintiff should continue to run the boat long enough to pay the price stipulated in the agreement.

I was at first inclined to think that even under such an agreement, the plaintiff having the boat in his possession, at the time it was seized by the defendant, and the company having retained out of the plaintiff's earnings in running the boat in their employ, towards the purchase of the boat, $136, and not having elected to terminate the agreement, he had such a special property in the boat as would sustain the action. But upon reflection, I am convinced that this position can not be maintained. To bring the case within the principle of those cases in which the action has been maintained by virtue of a special property, even against the general owner, the plaintiff should have an absolute vested interest in the boat. But, by the contract, the complete and absolute ownership remained in the company. To maintain this form of action, the plaintiff must show at the time of the conversion a right of property, special or general, in himself. This the plaintiff can not do. It is inconsistent with the express provisions of the agreement under which the plaintiff received the possession of the boat. His possession was that of a mere servant, restricted to use the boat for the company, and in the manner prescribed by them. Such possession, like that of the master of any other boat owned by the company, was the possession of the company. The terms of the agreement are such as to exclude the idea that it was intended that the plaintiff should have a lien upon the boat for the amount retained by the company before the entire price was paid.

This precise question has recently been before the supreme

Tuthill *v.* Wheeler.

court of Pennsylania, in the case of *The Farmers' Bank of Bucks County* v. *McKee*, (2 *Barr*, 318.) That was an action of trover for seven canal boats, sold by the sheriff as the property of the Sugar Loaf Coal Company, and purchased by an agent of the bank. An agreement between the company and McKee was proved, by which the former agreed to employ the latter to boat coal during the season of 1841, at certain rates ; and it was agreed " that $10 of the freight money of each trip should be retained by the company, and when that amount should equal the cost of the boats, which was $375 each, with interest, then they should be transferred to him." It appeared upon the trial that the company had credited McKee, for freight money retained under the agreement, about $1000. The judge who presided at the trial, held that the price of the boats not having been fully paid, the creditors of the company had a right to levy upon and sell their interest, to which the purchaser succeeded, and that the purchase by the bank, and its refusal to recognize any title in McKee, was evidence of conversion, and that he was entitled to recover to the extent of his payments on the boats. But the court held, upon error, that the judge erred in charging the jury that the plaintiff could recover to the extent of his payments, in pursuance of his contract. They say " the action was trover and conversion, and in that action it is essential for the plaintiff to show that the right of property was in him, at the commencement of the action ; and if he had not then paid up the whole purchase money, he had no right of property in the boats, nor was the company bound to transfer them to him. His remedy, if he had any, would be against the Sugar Loaf Company, for failure on their contract."

A similar question arose before the same court, in the case of *The Lehigh Company* v. *Field*, (8 *Watts & Serg.* 232.) There the boat had been levied upon as the property of the boatman. It was held that he was merely the servant of the company, until the boat was paid for ; that the agreement was only executory, and the property remained in the company until the price was fully paid. (*See also Strong* v. *Taylor*, 2 *Hill*, 326.)

There is nothing in the point made by the plaintiff, that there was no evidence that the collector had demanded payment of the tax, before he made his levy. It does not lie with the plaintiff to make this objection ; and besides, no rule is better settled, or rests upon more obvious good sense, than that a public officer shall not be required to prove that he has performed the duty which the law imposes upon him, until at least some evidence appears to the contrary. (*Dowing* v. *Rugar*, 21 *Wend.* 178. *Barhydt* v. *Valk*, 12 *Id.* 145.)

I am of opinion, therefore, that the decision at the trial was right, and that the motion to set aside the nonsuit should be denied.

Motion denied.

---

SAME TERM. *Before the same Justices.*