# ROME GROCERY COMPANY *v.* GREENWICH INSURANCE COMPANY OF NEW YORK.

1. In order to entitle an insurance company to recover back money paid upon a policy of insurance, it is, under the Civil Code, § 2113, incumbent upon the company to show affirmatively that after making payment it discovered evidence showing itself not liable on the policy.
2. Such evidence must consist of proof showing that, because of the fraud of the insured, the policy was ab initio void, or that after it issued he was guilty of conduct either vitiating the policy, or rendering it unconscionable for him to receive money thereon, and fraudulently concealed from the company, at the time of receiving payment, the fact that he had been guilty of such conduct.

Argued March 16, — Decided April 11, 1900.

Complaint. Before Judge Henry. Floyd superior court. January term, 1899.

*Fouche & Fouche,* for plaintiff in error, cited: Civil Code, § 2113; 2 May, Ins. § 575; 53 N. Y. 144; 62 N. Y. 85; 27 Barb. 354; 89 Ill. 62; 10 W. Va. 583, 589; Civil Code, § 5331;

43 *Ga.* 282; 49 *Ga.* 475; 79 *Ga.* 128; Id. 610; Code, § 3643;
102 *Ga.* 102, 103; 32 Hun, 365; 102 N. Y. 260; 1 *Ga.* 140;
Civil Code, § 3711.

*Reece & Denny* and *W. S. McHenry,* contra, cited: 99 *Ga.*
524; Id. 595; 100 *Ga.* 791; 104 *Ga.* 256(7); 105 *Ga.* 151; 106
*Ga.* 461, 464; 1 May, Ins. §§ 156, 158, 189, 277; 23 Minn.
479; 56 Pa. St. 210; 10 Cush. 587; 11 Cush. 280; 3 Gray, 583;
8 Gray, 33; 45 Me. 472; 46 Me. 394; 47 Me. 403; 51 Me. 110;
Id. 91; 2 Pars. Con. (5th ed.) 519; 28 Gratt. 508; 4 Daly, 296;
Id. 285, 293; 98 *Ga.* 466, 467; 100 *Ga.* 102, 103; 2 May, Ins.
§ 575.

Lewis, J. The Greenwich Insurance Company of New York
brought suit in Floyd superior court for the purpose of recov-
ering back money paid on an insurance policy issued by the
plaintiff to the defendant in consequence of the destruction by
fire of the property insured. The ground for the action was,
that the insured in his application for a policy had warranted
that the entire title, not only to the property insured, but also
to the land upon which the same was located, was absolute and
in fee simple in the applicant, and that the applicant was the
sole and undisputed owner of the whole of said property pro-
posed for insurance, including the land on which it stood.
Proof of loss was made out by the applicant, in which it was
reaffirmed that the representations made in his application were
true. Upon the faith of these representations, the company sent
an adjuster to Rome, Ga., where the property was located, and
they finally settled the loss by the company paying the insured
the sum of $534.50. Since said payment, the petition alleges,
plaintiff ascertained that the representations of the insured as
to the ownership of the land and buildings were false, and that
the title thereto was not in defendant, but that it claimed title
under a certain deed from Simpson to said defendant; and
petitioner had an accurate survey of the property made in
accordance with the description in said deed. This survey dis-
closes the fact that the gin-house property, that was insured,
was not embraced within the same. Plaintiff thereupon made
demand upon defendant for the refunding and repayment to it
of said sum, which defendant refused to entertain, and declined

to refund the money to petitioner. Petitioner further avers, in effect, that it was entirely ignorant of any defect in the title to the property until after the settlement was made, and if it had had knowledge of the condition of the title, it would not have paid any loss, and would not have insured the property at the beginning.

It appears from the record that there was introduced on the trial the policy of insurance, and the application therefor, and that the insurance extended from September 22, 1894, to March 22, 1895, to the amount of $1,000.00 upon the following property set forth and itemized in the policy as follows:

| | Sum Insured. | Valuation. |
| --- | --- | --- |
| "On steam power 1 & 2-story gin-house, built of frame and covered with shingles........ | $ 150. | $ 500. |
| On one gin-stand of saws, each | 75. | 150. |
| On one condensers, each...... | 35. | 60. |
| On beaters and cleaners, each.. | ...... | ...... |
| On one feeders and breakers, each ................... | 35. | 60. |
| On engine and boilers ....... | 250. | 600. |
| On press and fixtures belonging thereto, 55 ............... | ...... | ...... |
| On fan elevator and appurtenances ................... | 55. | 100. |
| On flues, leveler and distributor | ...... | ...... |
| On belting ................. | ...... | ...... |
| On running-gear and appurtenances ................... | ...... | ...... |
| On assured's cotton, ginned and unginned, packed and unpacked in said gin-house........... | 250. | 400. |
| On cotton held in trust or on commission, for which assured may be liable therein........ | ...... | ...... |
| On cottonseed therein....... | 150. | 250. |
| On grist-mill .............. | ...... | ...... |
| Total ....................  | $1,000. | $2,120. " |

It also appeared that the insured, in its application, guaranteed absolute title to this property, and to the land on which it was located.

To this petition the defendant answered, denying it had made any specific warranty; admitting the amount paid, but denying that it was the agreed amount of damages to the insured property. Defendant averred that the insured property was totally destroyed, and defendant's loss by the fire was $2,000.00; and that the amount paid was much less than the amount for which the property was insured, and it was accepted because the plaintiff would not pay the full loss, or what was justly due on the policy, without suit, and defendant took this sum to avoid a suit at law. The answer further denied the allegation that the title to the property insured, as well as the land upon which the same was located, was not absolutely in it, and averred that the charge contained in the petition with reference to this title was not the truth.

It appeared from the evidence that the deed under which the Rome Grocery Company claimed title to the property in question conveys lot 135, and 60 acres off the south side of lot 154 in the 22d district and 3d section of Floyd county. It also conveys the crops and personal property on said land; also one 8-horse power engine, one sixty-saw gin, feeder and condenser attached, also one cotton-press, all in the gin-house on said place, and the crop, lands, etc., described in the deed, warranted free from incumbrance. It further appears that plaintiff procured a surveyor to survey the land in question, and under his testimony, which identified the plat he had made of the land, it appeared that in the lot 135, and in the 60 acres cut off of the south side of lot 154, the gin-house was not included; that a part of the line, which included the line described in the deed, did take in a portion of the personalty, for instance, the engine, or a portion thereof, which was off a few yards from the house. The house, however, was in a few feet outside of the lines run by the surveyor. The evidence seems undisputed that all this property which had been insured had been fully paid for by the defendant, and that the personalty, which embraced by far the largest amount of insurance, was entirely unencumbered. After

a discovery of this condition in the title, a correspondence ensued between Livingston Mims, of Atlanta, Ga., the general manager for plaintiff in this State, and the Rome Grocery Company, in which Mims gave information about discovering that the title to the property was not in the defendant, and made demand upon the Rome Grocery Company to repay the money that had been paid. To these letters the latter responded, among other things, that it did own the property in question. Mims admitted in a communication to the defendant that the representation it made about the property was unintentional on its part; and clearly indicated in his letters that he thought the defendant was honest in the guarantee and warranties made in its application for insurance, and was laboring under an honest mistake about the title then, and when the loss was adjusted. At the conclusion of the testimony, the court directed a verdict against the Rome Grocery Company for the sum of $534.50 principal, and $157.45 interest; whereupon it made a motion for a new trial, and excepts to the judgment of the court below in overruling that motion.

1. It is very clear that under the Civil Code, § 2113, in order to entitle an insurance company to recover back money paid upon a policy of insurance, the burden of proof is on it to show affirmatively that, after making payment, it discovered evidence showing itself not liable on the policy. Upon this point all the evidence of the plaintiff below indicated that those of its agents who were sworn as witnesses, including Mr. Mims, and it may be one or two others, did not know of the defect in the defendant's title complained of in the action until after the adjustment of the loss was made. Mims, it seems, was located in Atlanta, and it does not appear that he ever made any investigation of this matter before the payment. It does not appear that the agent who received the application, and who testified in the case, made such an investigation; but it does not follow from this that the plaintiff was not through some other agent apprised of the defect in this title. The agent who would be presumed to have investigated or looked into such matters, or at least would have been more apt to have knowledge upon the subject of any breach of warranty by the insured, which it made in the

application for the policy, would be the agent who was sent to adjust the loss after the destruction of the property by fire. It appears from the testimony that there was evidently some compromise made between the insured and this agent. The testimony is uncontradicted that the insured sustained a loss far exceeding the total amount embraced in its policy, and yet a compromise was finally agreed upon by which it accepted in satisfaction an amount of a little over one half of what the policy called for. This witness was not introduced on the trial of the case, or accounted for; and we think, therefore, for this reason, even if the court was right in its conclusion on the law, that the defect of title shown by the evidence was of such a nature as to entitle the plaintiff to a recovery, he erred in assuming that the testimony conclusively showed that the company did not discover until after the adjustment of the loss evidence showing itself not liable on the policy. The insurance company is a corporation; and when the burden is upon such a party to show want of knowledge of a fact, it should at least produce such agents as are most likely to be chargeable with such knowledge, because notice can be brought home to a corporation only through the instrumentality of agents.

2. Section 2113 of the Civil Code declares: "If, after payment of loss, the insurer discovers evidence to show himself not liable on the policy, he may recover back the money in an action for money had and received." It is contended by counsel for defendant in error that this evidence clearly shows a breach of warranty on the part of the insured in reference to this title to the land upon which the insured property was situated, and that this rendered void the policy, notwithstanding the breach may not have inured to the injury of the insurer. The section above cited appears in the Code of 1863, and in all the Codes since that date. The object of the codifiers in compiling the first Code was to embody not only the statute law, but the common law of force in this State. As there was no effort by the codifiers to codify any statute upon that subject, we think it clearly proper, in determining the meaning of this section, to ascertain what was the general law of force in this country at the time of the adoption of the Code. It is, therefore, an open question as to

what kind of evidence, after payment of loss, will show the company not liable on the policy. It does not necessarily follow, simply because the company, when it paid the loss, was ignorant of a fact which might have enabled it to successfully defend an action upon the policy, that it can recover back the money it has paid thereon. It does not follow, because the insurance company could have successfully defended a suit upon this policy, on account of defect in the title of the insured to the property in question, that it can maintain this action for money had and received, after the payment of the loss. The authorities which seem to be relied upon by counsel for defendant in error are not at all in point. For instance, the case of *Williamson* v. *Orient Insurance Co.,* 100 *Ga.* 791, was a suit by the insured against an insurance company on his policy of fire-insurance which contained a stipulation that the policy was to be void if the interest of the insured were other than unconditional and sole ownership; and it appeared in that case that, before the policy was issued, the insured had executed a deed conveying to another the title to the building insured. Unquestionably that was a good defense to an action on the policy. It was not there decided that it would have been a good cause of action to recover back money paid in ignorance of the defense, for that question was not involved in the case. Under the facts in that case, however, even if the court had decided that money could have been recovered back by the company when paid in ignorance of the defense, we think the decision would have had no application to the case at bar; because in that case it appeared that the insured himself had executed a deed to another, conveying title to the property insured, before he made his application. There might, therefore, have been ground for allowing a recovery in that case on account of the actual fraud perpetrated by the insured upon the insurer. The same thing is true of the case of *Morris* v. *Imperial Insurance Co.,* 106 *Ga.* 461. That was a defense to an action upon a policy, where it was held that an absolute and unconditional covenant of warranty by the insured, of the truth of certain representations made by him in a written application for insurance, is binding upon him irrespective of the question whether such representations were made in good faith or other-

wise. Counsel also cite us to 1 May on Ins. § 156, in which the
author treats of the subject of express warranty, and declares
the general principle that "Whether the fact stated, or the act
stipulated for, be material to the risk or not, is of no conse-
quence, the contract being that the matter is as represented, or
shall be as promised; and unless it prove so, whether from
fraud, mistake, negligence, or other cause, not proceeding from
the insurer, or the intervention of the law or the act of God, the
insured can have no claim." It is manifest, however, from the
context that the author was not considering the question with
reference to an action brought by an insurance company to re-
cover back money that had been paid upon the policy. This
question is discussed in 2 May on Insurance, § 575. There the
author says: "Fraud in obtaining the policy, or fraudulent
representations made to obtain the money, will base a claim of
the company to a return of the money if they did not know of
the fraud at the time they paid it. But by paying the loss the
company waive or settle all questions of law or fact as to the
validity of the original contract (except fraud), which they had
the means of raising when they paid the loss." Evidently the
author means in that connection actual fraud, for in the very
next sentence he declares: "Even ignorance of a fact which
might have enabled the company to defend an action upon the
policy on account of a breach of warranty is not such a mistake
of fact as will enable it to recover the money. It will be pre-
sumed that the company either knew the fact or intended to
waive any such defense, and voluntarily paid the money. Other-
wise there would be no end to controversy and litigation, and
the insured would hold the money subject to a lawsuit until the
statute of limitations intervened." This question was directly
made and passed upon by the New York Court of Appeals in the
case of National Life Insurance Co. v. Minch, 53 N. Y. Ct.
App. 144, where it was held: "Mere ignorance of a fact which
would have enabled an insurance company to defend on account
of a breach of warranty is not such a mistake of fact as will
enable it to recover back money paid upon the policy. In order
to maintain such an action, fraud in obtaining the policy, which
was unknown to the plaintiff at the time the money was paid,

or fraudulent representations made to obtain the money, which were designed to and did have the effect of preventing inquiry, must be proved. Where the evidence is conflicting, fraud is a question of fact." Accompanying the opinion in that case are citations of a number of authorities from decisions of courts of last resort in several States. This same doctrine has been applied to an insured as well as to the insurer. In the case of American Insurance Co. *v.* Crawford, 89 Ill. 62, it was decided: "A settlement by one insured against loss by fire with the agent of the insurance company, if fairly and honestly made, is conclusive, although nothing is paid for a portion of the property destroyed, but if it was the result of falsehood and fraud on the part of the adjusting agent, then it is not binding or conclusive on any one; and this is a question of fact for the jury." Manifestly there is no reason then why the same doctrine should not be applied to the insurance company when it undertakes to rescind a settlement, and recover back money voluntarily paid by it to the insured on his policy. Authorities might be multiplied sustaining this doctrine, that there will have to be some actual fraud on the part of the insured in procuring the policy, or that after it issued, he must have been guilty of conduct rendering it unconscionable in him to receive the money thereon and fraudulently concealed the same from the company, before a right of action can be maintained by the company for money had and received.

There are authorities recognizing the right of an insurance company to recover back money, under certain circumstances, paid the insured in the settlement of a claim of loss on his policy, but, so far as our investigation has extended, in all these cases it appeared that the company acted, in adjusting the loss, upon some misrepresentation made by the insured, of a nature tending to show that he knew of its falsehood or incorrectness at the time he made such misrepresentations, and received the money with knowledge of the actual fraud which he had perpetrated. Those cases, of course, have no application to the controlling question involved in the present case. In this case there was no such pretense of any fraudulent conduct on the part of the plaintiff in error either before or at the time of receiving

compensation from the company's adjuster for the loss.   On the contrary, while demand was being made on it by letter from the general agent of the insurance company, it was conceded that it acted with perfect honesty.   It can not be denied that it really owned the property that was insured.   The record simply presents the question as to whether it had ever acquired title to the land upon which that property was located.   Speaking for myself alone, I am not prepared to say, under the facts of this' case, where the full purchase-money has been paid for property, and where the deed covers the house and personalty which was insured, that the insured does not, to say the least of it, have a complete equity to the little scrap of a few feet in area upon which the property was located.   There is certainly nothing in the record to indicate that the retention of this money by the insured would, under the facts disclosed, be taking an unconscionable advantage by it over the insurer.

We therefore think that the court erred in directing a verdict for the plaintiff, but that the issues should have been submitted to the jury under instructions from the court given in accordance with the principles of law herein announced.

*Judgment reversed.   All the Justices concurring.*