## MITCHELL, agent, *v.* GEORGIA & ALABAMA RAILWAY.

1. While at common law and by statute in this State, "mere possession of a chattel . . will give a right of action for any interference therewith," such possession must be in the plaintiff's own right, and not as agent of another.    This rule is not contravened by the Civil Code, § 3038.    The word "agent" as used therein is to be construed as meaning an agent who has a property, either general or special, in the personalty in his possession.

2. A petition brought in the name of a person who had not such a possession, to recover personal property taken from him, can not be so amended as to proceed in the name of the plaintiff for the use of the real owner.

LEWIS, J., dissenting.    Peaceable and lawful possession of a chattel, even if the holder has no title to the same, gives him a right to sue in trover a wrong-doer who has deprived him of that possession.    Hence it follows that where a husband is the manager of his wife's business, and as such is in the lawful possession of lumber belonging to her, which, without his authority or consent, was wrongfully removed by a railroad company, an action of trover in his own name will lie for the recovery of the property.

Argued May 23, — Decided August 9, 1900.

Trover.    Before Judge Smith.    Wilcox superior court. September term, 1899.

*Eldridge Cutts* and *Hal Lawson*, for plaintiff.

*Charlton, Mackall & Anderson, D. B. Nicholson,* and *W. A. Hawkins,* for defendant.

COBB, J. T. I. Mitchell, describing himself as "agent," brought an action against the Georgia and Alabama Railway, to recover possession of a certain described lot of lumber alleged to be in the possession of the defendant. The petition averred that the plaintiff was the owner of the property sued for, and that he had demanded the same of the defendant, who had refused to deliver it to him or to pay him the profits thereof. At the trial the plaintiff testified that he was in possession of the property described as agent for his wife, and that he had no other interest therein; that he had the lumber loaded on one of the cars of the defendant, intending to sell it to one Gibbs if he paid cash for it as he agreed; that Gibbs did not pay for the lumber, and the defendant, before delivery to it, and without authority of plaintiff, shipped the lumber to Gibbs; that plaintiff made a demand on the defendant for the lumber, but it refused to deliver the same to him. At the conclusion of the evidence the court granted a nonsuit on the ground that the evidence showed the title to the property sued for was in the plaintiff's wife, and that he had no such possession as entitled him to recover. The plaintiff then offered an amendment inserting in the petition the name of his wife as usee. The court refused to allow the amendment, and the plaintiff sued out a bill of exceptions complaining of this refusal and of the granting of a nonsuit.

1. The exception to the granting of a nonsuit brings up for determination the question whether a person in possession of a chattel as agent for another, and having no special property or interest therein, can maintain against a person wrongfully converting the goods an action of trover. A proper solution of this question requires a somewhat extended examination into the nature of some of the actions which were at common law employed in cases of injury to or interference with the personal goods of another. Our action of trover is purely statutory. In *McBain* v. *Smith*, 13 *Ga.* 315, Judge Warner said that it was a substitute for the old common-law action of detinue; while in *McElhannon* v. *Commission Co.*, 95 *Ga.* 670, Mr. Justice Atkinson said that it combined some of the character-

istics of both of the common-law actions of trover and detinue. We think it perhaps more accurate to say that our action of trover may be employed in any case in which replevin, detinue, or trover could be used at common law. We shall therefore inquire into the nature of these three forms of action, with a view to ascertaining what persons were authorized to maintain them. Replevin was employed to recover goods unjustly taken and wrongfully detained. It was generally used in cases of distress, when the person whose goods were seized gave security and replevied the property, in which event he was bound to bring replevin against the distrainor. 3 Bl. Com. 146 et seq. It seems, however, that it could be brought in any case where the owner had goods wrongfully taken from him by another. 1 Chitty, Pl. (16th Am. ed.) *181; Stephen, Pl. (Heard) *20. And in many of the States the action of replevin is by statute employed to recover personalty in any case in which possession is wrongfully withheld from the person entitled thereto. In this form of action at common law the goods themselves could be recovered, with damages for their wrongful detention. The action of detinue was used to recover goods wrongfully detained, though lawfully taken. In order to maintain this form of action it must have appeared, (1) that the defendant came lawfully into possession, (2) "that the plaintiff have a property," (3) that the goods were of some value, and (4) that they were capable of identification. In this action the plaintiff recovered the goods themselves, if they could be had, and if not, their respective values, and also damages for the detention. The gist of this action was the unlawful detention. 3 Bl. Com. 151. The common-law action of trover and conversion lay to recover damages equal to the value of the goods wrongfully withheld, but not the goods themselves. The gist of this action was the unlawful conversion. 3 Bl. Com. 152. Under our action of trover the plaintiff may elect whether he will take a verdict for the property or its value, or for damages alone, or for the property alone, and its hire, if any. Civil Code, § 5335.

It is well settled that, to support any one of the three common-law actions, the plaintiff must have had either a general or special property in the goods seized. "To support replevin,

the plaintiff must, at the time of the caption, have had either the general property in the goods taken, or a special property therein." 1 Chitty, Pl. 239, *183. "It is a general rule, that the plaintiff must have the property of the goods in him at the time of the taking." Coke upon Litt. 145 b. See also Sanford Mfg. Co. v. Wiggin, 14 N. H. 441, s. c. 40 Am. D. 198; Beckwith v. Philleo, 15 Wis. 223; Pattison v. Adams, 7 Hill, 126, s. c. 42 Am. D. 59; Walpole v. Smith, 4 Blackf. 304. To maintain the action of detinue it must appear "that the plaintiff have a property." 3 Bl. Com. 152. "It seems to be a general rule, that the plaintiff must have a general or special property in the goods at the time the action was commenced, in order to maintain detinue." 1 Chitty, Pl. *137. See also 6 Enc. P. & P. 645 et seq. In reference to the common-law action of trover, Mr. Chitty says that in order to support the action the plaintiff must at the time of the conversion "have had a complete *property*, either *general* or *special*, in the chattel; and also the actual possession, or the right to the immediate possession of it." 1 Chitty, Pl. *167. And on the next page he says: "Without an absolute or special property, this action can not be maintained." See also 26 Am. & Eng. Enc. L. (1st ed.) 744. In this State the general rule is, that in order to maintain trover the plaintiff must show title in himself. *Gilmore* v. *Watson*, 23 *Ga.* 63; *Jaques* v. *Stewart*, 81 *Ga.* 81; *Palmour* v. *Fertilizer Co.*, 97 *Ga.* 244. While a property in the goods, either general or special, must appear, to authorize any one of the three forms of action, "in an action of replevin against a wrong-doer prior possession is alone sufficient to enable the plaintiff to recover." Shinn, Replev. § 200. See also 18 Enc. P. & P. 505; Cobbey, Replev. § 423. The same is true of trover. In discussing what is meant by having a special property in a chattel, Mr. Chitty says: "It is a general rule that the bare possession of goods without any strict legal title confers a right of action against a mere wrong-doer, having no right, and not clothed with any authority from the real owner." 1 Chitty, Pl. *170. "Possession is prima facie proof of ownership of a chattel not unlawfully acquired, and, whatever the interest of the possessor in the thing may be, is sufficient to enable trover to be maintained as against all the world except the rightful owner, for a con-

version committed in respect to it." 26 Am. & Eng. Enc. L. 748. See also Broom's Com. (9th ed. by Arch. & Col.) 912; 1 Smith's Lead. Cas. 632. This principle is well settled, and has been incorporated in our code in the following language: "Mere possession of a chattel, if without title, or wrongfully, will give a right of action for any interference therewith, except as against the true owner or the person wrongfully deprived of possession." Civil Code, § 3886. This section, as stated, is but a codification of the common law, and the principle intended to be announced therein is the same as that above quoted from Chitty and the Encyclopædia. As this case turns, to a large extent, on the construction of this section, it is necessary to ascertain the meaning of the words "mere possession" as used therein.

As a general rule, as is laid down in the decisions from this court, cited above, a plaintiff in order to recover in trover must show title in himself. Possession is presumptive evidence of title, and becomes conclusive evidence against a mere wrong-doer; he not being allowed to set up the "jus tertii." Dicey, Parties, mar. p. 356, citing Jeffries *v.* Great Western R. R. Co., 25 L. J. 109, 110, Q. B., in which the judgment was rendered by Lord Campbell, who, in his opinion, uses this language: "The law is, that if a person is peaceably and quietly in possession of a chattel as his own property, a person who takes it from him having no good title is a wrong-doer, and such person can not defend himself by showing that the chattel is not the property of the plaintiff, but the property of a third person." Whatever language of Lord Campbell there is in the opinion in that case which seems to support the proposition, that an agent who is in possession can maintain an action in his own name, must be qualified by the language above quoted, in which the learned Chief Justice states that the case with which he is dealing is one where the plaintiff was in possession of the chattel "as his own property." An examination of the authorities has satisfied us that the possession referred to is a possession in the possessor's own right, or under a claim of property, either general or special. Even in the case of a thief, who according to many authorities can maintain trover, or a finder, or a bailee, the possession which the plaintiff claims is for himself and in his own right. It can not be a possession

simply as the agent or servant of another, who has no interest in the property itself. The action of replevin "can not be maintained by one whose right of possession is *for* another: as for example, an agent or servant. The plaintiff must be entitled to possession in his own right." Shinn, Replev. § 32. " A mere servant, or a depositary for safe custody, has not such property as will support this action, his possession being that of the master or bailor." 2 Gr. Ev. (15th ed.) § 561. " A mere servant who has possession at the will of the owner has not such a right of possession as will sustain the action." Cobbey, Repl. 224, § 423. Mr. Chitty states that the rule, that a mere servant can not maintain trover, is an exception to the general rule, that bare possession will authorize it. 1 Chitty, Pl. *170. " The possession by a mere servant of his master's goods is ordinarily deemed to be so far the possession of the master as to give the servant no right of action against one who disturbs that possession." Mechem, Ag. § 765. The case of *Lockhart* v. *W. & A. R. Co.*, 73 *Ga.* 472, seems to be almost decisive of this question. In that case the plaintiff brought suit against the defendant for "damages to personal property," the subject-matter of the suit being an oil painting of a landscape. On the trial it appeared from the testimony for the plaintiff that the picture belonged to her brother, who had given it to her to keep until he called for it, and if he never did so, it was to be her property. It was held that as the plaintiff had no property, either general or special, in the picture but was a mere borrower, she could not maintain the action. The plaintiff was in possession of the picture, but her possession was in the right of another, and no presumption of ownership arises from such a possession. The principle that, when possession is shown, a mere wrong-doer could not set up the jus tertii, as the presumption arising from such possession would be conclusive against him, was recognized, but it was ruled that that principle has no application to a case in which the plaintiff shows that he is not entitled to possession in his own right.

In the case of Philips *v.* Robinson, 4 Bing. 422, the declaration alleged that the plaintiff delivered to the defendant certain deeds belonging to the plaintiff. The defendant pleaded that the plaintiff was not lawfully possessed of the deeds as of

his own property, and that they were not the property of the plaintiff. At the trial it was proved that the deeds in question were the title deeds to an estate belonging to the plaintiff's wife, and that the plaintiff, or his agent, had delivered them to the defendant. It was held that the plaintiff could not maintain detinue for the deeds, or their value. Park, J., said: "In order to support an action of detinue, the plaintiff must have a general or a special property in what he seeks to recover." Burrough, J., remarked: "At the time of this action the plaintiff had no interest in these deeds; they were of no value to him; and, therefore, the nonsuit was right." See also Solomons *v.* Bank of England, 7 East (New ed.), 79; De La Chaumette *v.* Bank of England, 9 Barn. & C. 100. In the case of Williams *v.* Millington, 1 H. Bl. 81, it was held that an auctioneer could maintain against a buyer an action for goods sold and delivered, but it was said that he stood in a different relation to a bare servant or shopman, as he had possession coupled with an interest, which was a lien for the charges of the sale, the commission, and the auction duty, which he was bound to pay. In Ludden *v.* Leavitt, 9 Mass. 104, it was held: "Where a sheriff, having attached personal chattels on an original writ, delivers them to a third person for safe-keeping, such person is the mere servant of the sheriff, and has no legal interest in the chattels; he can not, therefore, maintain trover for them." In Scott *v.* Elliott, 61 N. C. 104, it was held: "Possession of a chattel by one who holds *for himself,* in respect to either a general or a special property, will support *replevin* or *trover ;* such possession *for another,* will not support an action." In Harris *v.* Smith, 3 Serg. & R. 19, it was held: "A mere servant, who has the care of goods, can not maintain replevin; but if they are delivered to him by the master, as bailee, he may." In Clark *v.* Skinner, 20 Johns. 465, it was held that the owner of goods can maintain replevin against a sheriff or other officer who takes them from the custody of a servant or agent of the owner by virtue of an execution against such servant or agent; "the actual possession of the property in such case being considered as remaining in the owner, and not in the defendant in the execution." In Dillenback *v.* Jerome, 7 Cowen, 294, it was held: "One who receipts property levied upon by a con-

stable or sheriff, by virtue of an execution, and engages to deliver to the officer, has neither a general or special property. He is the mere servant or agent of the officer, and can not maintain trover in his own name, though the property be taken and converted by a stranger." See also the following cases: Thorp *v.* Burling, 11 Johns. 285; Stephenson *v.* Little, 10 Mich. 433; White *v.* Dolliver, 113 Mass. 400; Donahoe *v.* McDonald, 92 Ky. 123; Linscott *v.* Trask, 35 Me. 150; Tuthill *v.* Wheeler, 6 Barb. 362; Waterman *v.* Robinson, 5 Mass. 302; Brownell *v.* Manchester, 18 Pick. 232; Rosentreter *v.* Brady, 63 Mo. App. 398; Baker *v.* Campbell, 32 Mo. App. 529; Rockwell *v.* Saunders, 19 Barb. 473; Faulkner *v.* Brown, 13 Wend. 64. These authorities abundantly settle the proposition, that a mere agent or servant, having no special property therein, can not, on bare possession alone, maintain an action to recover goods from a person wrongfully in possession; and this for the reason that his possession is that of his principal.

The rule that a person wrongfully in possession of goods taken from another can not set up title in a third person, or dispute the plaintiff's title, is perfectly consistent with the principle above announced. As stated above, a general or a special property in the personalty is essential to maintain trover, but as against a wrong-doer possession will be held to be conclusive evidence of such a property. But certainly a defendant, though a wrong-doer, will be permitted to dispute the possession itself; and he does this successfully by showing that the bare physical possession upon which the plaintiff relies was not in his own right but in that of another. As the plaintiff's right of recovery rested, in the present case, upon bare possession, and as the evidence introduced in his behalf shows that such possession was in the right of his wife and not in his own right and that he had no interest whatever in the property, the presumption of ownership arising from possession was rebutted, and, under the authorities above referred to, he was not entitled to recover. It is said, however, that the Civil Code, § 3038, changes the rule recognized by the decisions and authorities above referred to. That section is as follows: "An agent having possession, actual or constructive, of the property of his principal, has a right of action for any interference with

that possession by third persons." If this section be construed literally, its language is such as to support the position that the possession of an agent is sufficient to sustain an action in his own name against one who wrongfully interferes with such pos-- session. The rule on this subject as it existed at common law is thus stated in the 1 Am. & Eng. Enc. L. (2d ed.), 1166: "An agent who is in possession of or entitled to the possession of property belonging to his principal, by virtue of the agency, and having a special or general property therein, has a right of action against a third person who unlawfully injures or converts such property." The rule is stated in substantially the same language in Mechem on Agency, § 765. The provisions of section 3038 of the Civil Code appear, for the first time in the statute law of this State, in the Code of 1863. It has been embodied in the same language in every code since adopted. If this section be so construed as to authorize an agent to maintain an action in his own name on a possession which is founded on nothing more than a right of property in his principal, the effect of the section was to make a radical change in the law as it existed at the time of the adoption of the Code of 1863. The authorities above cited demonstrate clearly that there can be no escape from this proposition. Was it the intention of the codifiers in framing this section, and of the legislature in adopting it, to change the law existing at the time the code was adopted, or was it intended merely as·declaratory of the law as it then stood? The codifiers were not authorized to make new law, but "to prepare for the people of Georgia a Code, which should as near as practicable, embrace in a condensed form, the Laws of Georgia, whether derived from the common law, the Constitutions, the Statutes of the State, the decisions of the Supreme Court, or the Statutes of England, of force in this State." See the Preface to the Code of 1863. In *Shumate* v. *Williams*, 34 *Ga.* 245, 249, Chief Justice Lumpkin, in speaking of the Code, said: "It is mainly a declaratory exposition, in a concise and systematic form, of the body of laws, common and statute, which the codifiers found already established."

In *Mechanics' Bank* v. *Heard*, 37 *Ga.* 401, 412, Judge Harris uses this language: "It should be kept in mind that the codifiers were commissioned to embody the principles of the com-

mon law in force in Georgia; they had no authority to originate
new matter for legislative sanction. It therefore is incumbent
on those who assert that they went beyond their commission . .
to prove it." In *Phillips* v. *Solomon,* 42 *Ga.* 192, 195, Judge
McCay said: "It must be remembered that the object of the
codification was not to *make* laws, but to *codify* or *declare* those
already in existence: Act of 9th December, 1858. It is true,
that in some instances the Code has *changed* the law, though
these changes are less frequent than is supposed. But, in the
main, it can not be doubted that the Code is to be looked at as
what it purports to be, a codification of our laws, as they ex-
isted at the time, and its provisions are not to be considered as
changing the law, unless the intent to change be clear." In
*Gardner* v. *Moore,* 51 *Ga.* 269, the same Judge remarked: "The
Code is not to be construed as changing the old law, unless the
change be very apparent, and it would be specially dangerous
to take the definitions of the Code as absolutely accurate, and
as excluding the common-law definitions, unless it be plainly
manifest that the intent was to make an exclusive and inclu-
sive definition." The language of Judge McCay in 42 *Ga.*,
supra, was quoted approvingly by Mr. Justice Hall in *City of
Atlanta* v. *Gas Co.*, 71 *Ga.* 119, 120, who took occasion to add:
"Many similar views may be found scattered through our re-
ports and the reports of other States, but these are deemed suf-
ficient. We are well satisfied that, in this instance, no change
of the provision in question was intended, or was in fact made."
In that case the court was dealing with a section of the code
which apparently changed the existing law. In *Gillis* v. *Gillis*,
96 *Ga.* 1, 10, Mr. Justice Lumpkin, in dealing with a section
of the code which it was claimed altered the existing law with
reference to witnesses attesting wills by their marks, used this
language: "There is no act of our legislature or decision of
our Supreme Court, before the adoption of our code, that ever
changed, or attempted to change, the old law as to witnesses
attesting wills by their marks; and there is at least one case de-
cided by this court, before the code went into effect, which is
in harmony with and upholds that law. See *Horton* v. *John-
son,* 18 *Ga.* 397. How, then, can it be said that the compilers
of our code intended to incorporate into it any other than the

prevailing rule of law? It is not to be presumed that they, learned in the law, would, except in rare instances, themselves make a rule of law, when they were only empowered to codify existing laws of force in this State." In *Lamar* v. *McLaren*, 107 *Ga.* 591, 598, Mr. Justice Fish uses this language: "The rule is that, unless the contrary manifestly appears from the words employed, the language of a code section should be understood as intending to state the existing law, and not to change it." The court was dealing with a section of the code in that case which, if construed literally, clearly changed the existing law. In *Rome Grocery Co.* v. *Greenwich Ins. Co.*, 110 *Ga.* 618, Mr. Justice Lewis, in dealing with a section which, according to its literal terms, changed the existing law, says: "The object of the codifiers in compiling the first code was to embody, not only the statute law, but the common law of force in this State. As there was no effort to codify any statute upon that subject by the codifiers, we think it clearly proper, in determining the meaning of this section, to ascertain what was the general law of force in this country at the time of the adoption of the code." The ruling in that case followed what was the law existing at the time of the adoption of the code, and not what the terms of the section, literally construed, would have required. The rule on the subject under investigation in the present case being well settled when the code was adopted, and there being no sufficient reason suggested why such rule should not have been allowed to remain unchanged, and it not being "clear" that there was an intent to change the law on the subject, the section of the Civil Code now under consideration should be construed as a mere codification of the existing law; and, therefore, the word "agent" as used therein should be held to mean an agent who has a special property or interest in the chattel. Without such an interest, his possession is the actual possession of his principal, as was held in *Hillyer* v. *Brogden*, 67 *Ga.* 24. The word "agent" appearing after the plaintiff's name in the petition is merely "descriptio personæ" and is to be treated as surplusage; and hence the action is to be regarded as one brought in the name of the plaintiff as the person entitled to recover in his own right. Civil Code, § 2998; *Owsley* v. *Woolhopter*, 14 *Ga.* 124; *McDuffie* v. *Irvine*, 91 *Ga.* 748; *Atlanta Brewing Co.*

v. *Bluthenthal*, 101 *Ga.* 542; *Lester* v. *McIntosh*, 101 *Ga.* 676.
So treating it, the action was not maintainable, and there was
no error in awarding a nonsuit.

2. When the plaintiff relies on title to recover possession of
personal property wrongfully withheld from him, he must show
a legal title; a mere equitable title will not suffice. When,
therefore, it appears that the legal right of action is not in the
plaintiff, he has no right of action at all, either in his own name
or in that of another. He can not sue for the use of the per-
son who has the legal right of action but the action should be
brought in the name of the real plaintiff. See *Richmond & D.
R. Co.* v. *Bedell*, 88 *Ga.* 591 (3); *Cunningham* v. *Elliott*, 92 *Ga.*
159. "It is well settled that an action of replevin can not be
brought in the name of one person for the use of another, for
the action involves nothing but legal rights, and if equities are
to be settled, another form of action must be resorted to. While
the name of the usee might be treated as surplusage, a recov-
ery can only be had where it is shown that the plaintiff is en-
titled to recover. The usee's title can not be considered in the
action, and if the plaintiff have no title, the action must fail."
Cobbey, Replev. § 425. See also 18 Enc. P. & P. 507; Moore
v. Watson, 40 Atl. (R. I.) 345; Myer v. Warner, 1 So. (Miss.)
837; 20 Am. & Eng. Enc. L. 1056, 1057. What is said above
applies also to the action of trover. 26 Am. & Eng. Enc. L.
(1st ed.) 744. There was no error in rejecting the amendment.

*Judgment affirmed. All the Justices concurring, except*

Lewis, J., dissenting. It is inferable from the testimony in
this case that, prior to the conversion of the property in dis-
pute by the defendant, the transactions the husband had with
the railway company were in his individual name. It is true
he stated that the real title to the property was in his wife;
that he was manager of his wife's business, and the property
was actually in his peaceable and lawful possession. I think
it quite evident that the nonsuit was granted in the present
case upon the ground that the evidence showed the title to the
property was not in the plaintiff but his wife. The entire ar-
gument of counsel for defendant in error, in endeavoring to up-
hold the judgment of the court below granting the nonsuit, is
based purely upon this idea. While the plaintiff testified the lum-

ber belonged to his wife, that it was cut on her land, and sawed with her engine and mill, yet he further testified positively and without contradiction : "I had an interest in it by reason of acting as agent for her and having charge of her business." There is no doubt that at common law an action of trover is maintainable in favor of any one having possession of property against any wrong-doer who deprives him of such possession, and this peaceable possession on the part of the plaintiff, without further proof of title, is amply sufficient to maintain the action.    In Dicey on Parties to Actions (2d Am. ed.), 376, it is declared : "A person who has actual possession of goods has a right to possess them against any one who can not show a better title, or, what is the same thing, who can not show that in interfering with possession of the goods, he is acting under the authority of some one who has a better title than the possessor."    In the case of Jeffries *v.* Great Western Ry., 25 L. J. 109–110, Lord Campbell, C. J., enters into a discussion of this question.    In his opinion he says he thinks "that the jus tertii could not be set up.  .  .    I conceive the law is, that if a person is peaceably and quietly in possession of a chattel as his own property, that a person who takes it from him, having no good title, is a wrong-doer, and that such person can not defend himself by showing that the chattel is not the property of the plaintiff, but the property of a third person.  .  .    It is of the greatest importance that a man shall not, having no good title of his own to the property, be allowed to seize it, and thereby probably bring about a breach of the peace and occasion great mischief and confusion.  .  .    It is allowed that if an action of trespass is brought by the party in possession, the defendant can not set up the jus tertii, he having no right in himself. I think there is no difference whatever for this purpose between an action of trespass and an action of trover.    In both cases the plaintiff rests on his possession of the property; and the question is, whether the person who has no title whatever of his own shall be allowed to show that the plaintiff has not the right of property.    The right of property is presumed from the possession; and is that presumption to be rebutted by evidence on the part of the defendant, a mere stranger and wrong-doer, showing that the plaintiff was not the real owner of the chat-

tel?"   See also Rogers *v.* Spence, 13 M. & W. 579–580.   In discussing this right of a mere possessor of property to maintain trover against a wrong-doer, it was decided in that case: "These rights of action are given in respect of the immediate and present violation of the possession of the bankrupt, independently of his rights of property — they are an extension of that protection which the law throws around the person, and substantial damages may be recovered in respect of such rights, though no loss or diminution in value of property may have occurred."   The decision of Lord Campbell in the case of Jeffries *v.* Great Western Ry., above cited, is extensively quoted in Dicey on Parties to Actions, 378.   The same case is also reported in 85 Eng. Com. Law Rep. 802.   See also Faulkner *v.* Brown, 13 Wend. 64; Sutton *v.* Buck, 2 Taunt. 302.

Our Civil Code, § 3886, clearly adopts that common-law rule in the following language: "Mere possession of a chattel, if without title, or wrongfully, will give a right of action for any interference therewith, except against the true owner or the person wrongfully deprived of possession."   In the case of *Harpes* v. *Harpes,* 62 *Ga.* 394, it is decided: "One from whose hands property of an estate has been wrongfully taken, may bring trover for its recovery against the tortious holder, although there has been no administration."   Chief Justice Warner, delivering the opinion in that case, says: "The mere possession of a chattel, if without title, or wrongfully, will give a right of action for any interference therewith, except as against the true owner, or the person wrongfully deprived of possession."   In that case the suit was by a widow of the deceased, to recover possession of a certain described horse.   No administration had been granted upon the estate, and it was clear that the plaintiff in that case had no title whatever in the property.   It is said in the opinion: "If the plaintiff had sued for the horse as a part of the estate of her deceased husband, then a grant of administration would have been necessary to have entitled her to recover; but she declared against the defendant as a wrong-doer, upon her own possession of the property sued for.   The dismissal of the plaintiff's action was error."   This doctrine is recognized in 2 Greenleaf on Evidence, § 637, in his chapter on trover.   In discussing the right of one having a

special interest in property to maintain an action of trover for the same, he adds: "but a lower degree of interest will sometimes suffice, against a stranger ; for a mere wrong-doer is not permitted to question the title of a person in the actual possession and custody of the goods, whose possession he has wrongfully invaded." See also 26 Am. & Eng. Enc. L. 744—8. The idea, therefore, of the law embodied in the section of the code above cited is evidently to give one who has possession of property, even if he has wrongful possession of it, a right of action against any one who interferes therewith, unless he should be the true owner, or the person wrongfully deprived of possession. The bare possession of the plaintiff makes out in law title sufficient to recover in such a case; and the wrong-doer is estopped from denying his title by showing a legal title in another. This, however, is a stronger case than a suit by one in wrongful possession of property, for there is no question, under this evidence, that the plaintiff was in its rightful possession. The defendant was guilty of a conversion of the property when it moved the same from where the plaintiff had placed it without his authority or consent.

But it is contended that, the evidence in this case showing that the plaintiff was not the owner of this property, he was not, in contemplation of law, in possession thereof in his own right, and that his possession was, therefore, not his own, but really that of his principal. I do not think the word "possession" in Civil Code, § 3886, will bear any such construction. The term "mere possession" must have some significance, and I think it necessarily means the party having the actual, manual custody of the property at the time his actual possession thereof is interfered with. It seems from the ingenious argument of Mr. Justice Cobb in his opinion in this case that he has reached the conclusion that, in order to maintain an action of trover, the possession of the plaintiff, which has been interfered with, must have been coupled with some interest in the property sued for. But that is entirely inconsistent with the language of this section ; for it is therein plainly stated that even if the party, though in possession, is without title, or is in possession wrongfully, he can maintain an action for any interference therewith, except as against the true owner or the person

wrongfully deprived of possession. This language, then, is entirely inconsistent with the idea that such a possession, to authorize the action, must be in a person having some interest in the property. If that had been the intention of the codifiers, evidently lawyers of their learning would have made it appear in language unmistakable; for instance, by simply adding, that the possession of a chattel, "coupled with an interest in the same," will give a right of action, etc. They would not have written, "Mere possession of a chattel," etc., will give a right of action, for the expression, "without title, or wrongfully," implies that the party need not have had any interest whatever in the property in dispute. But apart from this, from the evidence above referred to, it will be seen that this plaintiff, while he did not claim title to the property, did actually claim an interest therein by virtue of the services rendered in the management of his wife's affairs. It is contended, however, that being the agent of the owner, he was not, in contemplation of law, in possession of the property; that his possession was the possession of his principal. This proposition is completely answered by the provisions of Civil Code, § 3038, which declares: "An agent having possession, actual or constructive, of the property of his principal, has a right of action for any interference with that possession by third parties." So, if there was ever any doubt about the right of an agent to bring this action against a wrong-doer, it strikes me it is forever set at rest by this provision in the code. In the opinion of Mr. Justice Cobb, however, it is contended that this section of the code was intended as an embodiment of the common law, and that under the common law an agent had no such right of action even against a wrong-doer, unless the agent's possession was coupled with an interest he had in the property. In the first place, I do not think this is a correct view of the common law. There can be no doubt that, as a general rule of law, to maintain an action of trover, the plaintiff must have had either a general or special property in the goods seized, and abundant authority can be cited from text-books, as well as from decisions of courts, which recognizes this general principle. The truth is, actions of trover in this country are not often based upon a mere possession of the plaintiff of which he has been deprived by a wrong-doer who has no in-

terest whatever in the property. The majority of trover cases are of such a nature that the plaintiff can not recover unless he shows title to or interest in the property sued for. Often is it the case that the defendant never derived any possession from the plaintiff at all, and that he claims a right to the property entirely under a different chain of title. Hence we find many authorities announcing this principle in general terms. But there is absolutely nothing in them at all inconsistent with the view I entertain in this case. Take for example some of the cases cited by Mr. Justice Cobb. To support an action of this character he cites a number of authorities to the effect that the plaintiff, at the time of the action, must have either a general or a special property in the personalty.

In Sanford Mfg. Co. *v.* Wiggins, 14 N. H. 441, 40 Am. Dec. 198, it was decided that replevin can not be maintained unless the plaintiff has, at the time of the taking, either a general or special property in the goods. But that case did not involve any principle whatever touching the right of recovery on actual possession alone against a wrong-doer. That was a general principle in an action of replevin. On p. 199 of that case it will appear that the defendant was a deputy-sheriff, and he set up title in the property in one Hayden, and that the same was seized by defendant as deputy-sheriff by virtue of an attachment against Hayden. The same general principle is declared in 7 Hill, 126, cited by Mr. Justice Cobb. It does not appear from the facts therein that it has any reference whatever to the questions involved in the case at bar. The same general principle is announced in Beckwith *v.* Philleo, 15 Wis. 223, likewise cited; but it will appear from the facts in that case on p. 229 that the defendants, instead of taking possession of the property involved, to wit, lumber, from the plaintiff, were rightfully in possession of the premises at the time of bringing the suit, and that the cutting of the timber by them, instead of being a wrongful act, was perfectly legitimate under the contract they made by virtue of which they acquired possession of the premises. He also cites 1 Chitty, Pl. *137, to the effect that the plaintiff must have a general or special property in the goods at the time the action is commenced, and he also quotes from p. 167 of this work, to the effect that, in order to

support the action, the plaintiff must, at the time of the conversion, "have had a complete property, either general or special, in the chattel." But in another place in his opinion he adverts to p. *170 of the same work where Mr. Chitty lays down the general rule that "the bare possession of goods without any strict legal title confers a right of action against a mere wrongdoer, having no right, and not clothed with any authority from the real owner." In the same connection, and on the same page, the author adds: "The only exception which appears to exist is in the case of a mere servant acting professedly as such, and having only the custody of goods." He also quotes from 2 Greenleaf, Ev. (15th ed.) § 561, as follows: "A mere servant, or a depositary for safe custody, has not such property as will support this action, his possession being that of the master or bailor." The writer has above quoted from the same author where, further on in the same work, he takes quite a different view of a right of action against a mere wrong-doer, who is not permitted to question the title of a person in the actual possession and custody of goods whose possession he has wrongfully invaded. Great reliance is placed by Mr. Justice Cobb upon the decision of this court in the case of *Lockhart* v. *W. & A. R. R.*, 73 *Ga.* 472. Upon a careful review of that decision and the facts in that case, I can not see that it in the least sustains the view of the majority of this court. That was not an action of trover, but an action for damages resulting from an injury done to an oil-painting by the defendant. Civil Code, § 3886, has no application whatever to that case. It clearly appears that the defendant did not wrongfully get possession of the property from the plaintiff. On the contrary the property that was damaged was received by the defendant for transportation. It appears in the case that the plaintiff was only a borrower, and acquired no title in the picture loaned. She brought suit against the defendant, not because of any unlawful possession of the picture by it, but because of injury it sustained while in its lawful possession. It is there expressly recognized that the carrier can not dispute the title of the party delivering goods for transportation, either by setting up title in himself or in a third person, which is not being enforced against him; but, says the court on p. 474, "that is not this case; he sets up no

adverse claim; does not refuse to deliver the property to the consignee." In such a case where the plaintiff had no interest in or title to the property which had been damaged, she, of course, had no right of action, for she had not been damaged. I think this is really authority to sustain my view; for it is intimated in the opinion that if the railroad company had unlawfully deprived the plaintiff of possession of the property, she could have maintained an action against it, although she had no title to same.

I fail to find that any of the authorities cited by Mr. Justice Cobb sustain his theory of what the common law is, that possession of an agent of his principal's chattels will not enable him to maintain an action against a wrong-doer who has unlawfully deprived him of such possession, because his possession is in law possession of the principal. As a general rule an agent can not maintain an action in trover for the recovery of his principal's property; but that rule does not apply when he is in possession of the principal's property, and has been deprived thereof by the wrongful act of a person who has no interest whatever in that property. To say that Civil Code, § 3038, refers to an agent not only who has possession, actual or constructive, of the property of his principal, but refers to one who has an interest in the property, would be giving it a construction which was evidently never contemplated by the codifiers. If the agent's right of action be based upon the fact that he has an interest in the property, then he necessarily occupies some other relation than that of mere agent. If that is the only thing that gives him a right to sue, then his possession is not that of an agent, but of an owner, and he had the right to protect his interest in the property against a wrong-doer, independently either of section 3038 or 3886 of the Civil Code. Chitty, the authority relied upon by Mr. Justice Cobb, recognizes but one exception which even appears to exist, and that is where the possession is that of a mere servant. I know of no authority that recognizes the possession of an agent as an exception. But suppose it did, and at common law an agent did not have a right of action of this sort, then manifestly, under our Civil Code, that principle of the common law has been changed. Suppose the word "servant" had

been used instead of the word "agent" in section 3038, no one could contend that the servant could not bring this action. If, therefore, under the common law, mere possession by an agent of his principal's property will give him no right of action against a wrong-doer for interference with such possession, then that section of the Civil Code (3038) changes the common law by declaring exactly the contrary.

It is true that the main purpose of the codifiers was to embody in the code of laws of this State, not only the statutes, but the common law in force, and also the decisions of this court, and that in case of a want of absolute clearness as to what a section might mean, or in case of ambiguity, if it relates to a principle of the common law, a determination of what the common law on the subject is is entirely proper, and often of great aid in arriving at the true intent of the codifiers, and of the action of the legislature in adopting their work. But when we find in the code a provision as clear and unmistakable in its meaning as is embraced in section 3038, the invariable rule of this court has been to treat it as law, although it may never have been law before the adoption of the code. Now, that section says, "an agent having possession, *actual* or *constructive*." Of what? Of the property of his principal. It necessarily implies, so far as the absolute legal title is concerned, that the principal alone is the holder thereof; and yet that section gives the agent in possession a right of action for any interference with that possession by third persons. What possession? Manifestly and unquestionably, the possession he holds for his principal. If the agent has an interest in the property himself, he would have a right of action, not by virtue of his possession as agent of his principal, but by virtue of his possession in an entirely different capacity. The effect, then, of the construction of the majority of the court, as I conceive it, is to change the clear and unmistakable meaning of the language employed in the code, and to add to its words a thought that simply amounts to its absolute repeal. For the above reasons I feel constrained to differ from the views of the majority of my brethren, and think that the court below erred in granting a nonsuit.