Lewis *vs.* McAfee.

1st. That the verdict was contrary to law, contrary to the testimony, and strongly and decidedly against the weight of the evidence in the case.

The presiding Judge overruled the motion and refused the new trial, and that decision is the error complained of.

B. H. HILL and ADAMS & KNIGHT, for plaintiff in error.

GEORGE A. Hall, for defendants in error.

32  465
86  803

---

JOHN W. LEWIS, plaintiff in error, *vs.* JOHN M. McAFEE, defendant in error.

1. If a negro be hired to a Railroad for a particular service, and he is used by the Road for a different purpose or service from that intended, and an accident happens to him in the performance of such service that causes his death, the Road is liable to the owner for his value. Most especially is this so, when such accident results from the gross neglect and mismanagement on the part of the employees of the Road.

Case, in Fulton Superior Court. Tried before Judge BULL, at the October Term, 1860.

John M. McAfee hired a negro man, by the name of Peter, to the Western and Atlantic Railroad, for the year 1857. The only witness who speaks as to the terms and purposes of the contract of hiring, states that his recollection is, that the negro was hired to do shop work. The negro was put to service on a passenger train, as a train hand, to attend the break and wait upon the passengers. In this capacity he rode on the train from Atlanta to Chattanooga and back, and that he was permitted to ride on the train to Marietta once and sometimes twice a week, to see his wife. The conductor on the train knew that he was thus serving as a train hand, and that he was riding on the cars to Marietta. The negro worked mostly as a train hand. In the Spring of 1857, the negro boy went aboard one of the trains of said road, (other than the one to which he belonged as a hand,) at the passenger depot in Atlanta, and after riding on the train some quarter of a mile from the starting point, the negro jumped from the steps of the platform of the second car of the train, and was run over by the cars and so injured that he died in twenty-four hours after receiving the injury. The conductor of the train from which the negro jumped and was injured, did not know that the negro was aboard the train, and did not know that he jumped off, until the passengers reported the fact to him. It was a rule of the road, that when a negro hand, belonging or attached to one train rode upon another, for the conductor of the train to which he belonged, or the superintendent of the road, to give him a pass, and no pass was given to Peter to go on the train from which he leaped. It was also one of the regulations of the road, that no train should be put to a speed exceeding the rate of ten miles an hour, until the train had passed the lower switch, on its way from Atlanta to Chattanooga. One witness, who saw the negro leap from the car, testifies that this rule was violated, and that the train by which the negro was injured was running at the time of the injury, and before it had passed the lower switch, and that the witness, who was a yard master in the service of the road at the time, reported the conductor for

running his train in violation of the rule. This witness states that the train was running at the rate of twenty-five or thirty miles an hour, when the negro jumped from the car. The negro had jumped from trains before, but was not injured, because the speed of the train was not so great. Just before the negro jumped off, the yard master signed him not to do so. The conductor of the train from which the negro leaped, states that at the time of the injury the train was running at the rate of six miles an hour. The negro was worth from $1,000 00 to $1,200 00. McAfee claimed damages for the loss of his negro, and made a demand for a settlement as required by the statute, and a settlement was refused.

McAfee then brought an action to recover damages for the loss of the negro.

On the trial of the case, the evidence adduced developed the foregoing facts, and the presiding Judge charged the jury:

"That to entitle the plaintiff to recover, it must be proven that the slave was killed by the culpable negligence or carelessness of the agent or employees of the Western and Atlantic Railroad. That when a slave is hired for one purpose, to be employed in a particular service, and is put to a different and more dangerous service, and is killed or injured in consequence of that change in the character of the service, the party hiring him is liable to the owner for the damage sustained; but it must be shown affirmatively, that the injury resulted from the change of employment, or from negligence or carelessness of the party hiring or his agents."

The jury returned a verdict for the plaintiff for $1200 00.

Counsel for the defendant moved for a new trial on the grounds:

1st. That the verdict was contrary to law and the charge of the Court.

2d. That the verdict was against evidence, the weight of the evidence, and was unsupported by the evidence on the issues of the case.

The presiding Judge refused the new trial, and his decision is complained of as error.

SIMS and GASKILL, for the plaintiff in error.

A. W. HAMMOND & SON, *contra.*

*By the Court.*—LYON, J., delivering the opinion.

The only question made in this case is, that the Court below should have allowed the motion for a new trial on the only ground taken therein : that the verdict was contrary to law, the charge of the Court, and against the evidence, the weight of the evidence, and not supported by the evidence on the issue, (a variety of the same things stated in different ways.) The Court below refused the motion, and we concur in that judgment.

One of the witnesses, Wofford, testified that the negro was hired to the Western and Atlantic Railroad by his father, as agent for the owner, to do shop work. Instead of being put to that service he was employed generally as a train hand, and was put to any business that required his services by the agents of the road ; and on his return from the car shed, where he had been sent by one of the agents of the road, to the place of his general duties, the boy, of his own accord, and without the direction of any one of the employees, chose to ride back, by getting up and standing on the steps or platform of the car of the passenger train that was going out at that time, a thing that he was frequently in the habit of doing within the knowledge of the employers of the road, and getting off when the cars reached the place of general work or freight depot, and while the cars were in motion. On the morning in question, the train was going at a much greater speed than usual, or that the rules of the road allowed, and in attempting to get off at his usual place, he was run over and killed. This is the evidence in support of the verdict, and we think it altogether sufficient for that purpose.

The accident happened to the negro while he was in the actual performance of a service for the road, different from

Lewis *vs.* McAfee.

that for which he was specially employed. The rule of law on this subject is, that if the thing (hired) is used for a different purpose from that which was intended by the parties, or in a different manner, or for a longer period, the hirer is not only responsible for all damages, but if a loss occurs, although by inevitable casualty, he will generally be responsible therefor. The Mayor, etc., vs. Howard, 6 Ga., 219. This case is not an exception to the rule. But it is insisted that the negro, in the performance of the duty required of him, voluntarily and of his own accord, without the authority of any of the agents of the road, exposed himself to the danger that resulted in his death, and that this exposure was not necessary to the performance of the duty required. That does not change the rule. Had the negro been put to the service for which he was employed, and that only, this accident could not have happened. And in addition to this, the negro was in the habit, while in the performance of similar service, of getting on the train, and riding from the car shed to the freight depot, and getting off while the train was in motion, and there is no evidence that he had been prohibited or warned not thus to expose himself. "The neglect to exercise authority to forbid a thing, is to permit it." Gorman vs. Campbell, 14 Ga., 142.

Besides this, according to the evidence of the witness Lee, the train, at the time of the accident, was running at the speed of twenty-five or thirty miles per hour, when the schedule time was but ten miles per hour at the place of the accident. This was such culpable mismanagement and neglect on the part of the road as would have made the road liable for the accident, although the negro might not have been in the employment of the road on the terms stated.

Let the judgment be affirmed.