## Farkas v. Powell.

When one hires a horse to go a certain distance, he has no right, under his contract, to go beyond such distance without the consent of the bailor ; and when he does go beyond, it is at least a tech_nical conversion or violation of his contract and duty, and if the horse be injured while beyond the point to which it was hired to go, he is liable, whether the injury be caused by his own negligence or that of others, or even by accident, unless he be forced to go beyond that point by circumstances which he cannot control. But though the bailee be guilty of a technical conversion by riding the horse beyond the point to which it is hired to go, if the extra distance do not cause or contribute to the injury, and he return the horse within the limits of his original contract, he should not be held liable for an injury to the horse which occurs without his fault after he has returned it.

(a) The question whether the extra ride did or did not cause, or ma terially contribute to the injury, is for the jury.

March 16, 1891. Argued at the last term.

Hiring. Bailment. Conversion. Before Judge Bower. Dougherty superior court. April term, 1890.

Reported in the decision.

J. W. Walters, for plaintiff.

D. H. Pope, for defendant.

Simmons, Justice.

Powell hired from Farkas a horse to ride from Albany to the Whitehead place, in the country, a distance of five miles, and was to return by eleven o'clock at night. When he arrived at the Whitehead place, he learned that the person he wished to see was at the Bryant place, three or four miles beyond, and he rode on to that point. He remained at the Bryant place some two hours and a half, and left there for Albany about half past nine in the evening. On his return, and after getting between the Whitehead place and Albany, the horse fell in the road. After considerable trouble, he got the horse on his feet and led him about three miles, and when within about a mile of Albany,

the horse again fell, and he had to obtain the assistance of two colored men living near by, to again get the horse upon his feet.   He then took the horse to the lot of one of these men and left him there, and about daylight in the morning, walked on to the town and notified Farkas's stable-man where the horse was and of his condition.   The horse died within a day or two thereafter.   Farkas brought suit against Powell, alleging, in substance, that he had ridden the horse three miles beyond the place he had hired him to go, and that by negligence or cruelty the horse had been so injured that he died.   The evidence for the plaintiff tended to show that on the afternoon when the horse was hired to Powell, it was sound and in good condition, moved off briskly down the street and showed no signs of any disease, but that when returned the next morning, it was lame and could scarcely walk and had a halter burn around one of its feet.   The evidence for the defendant tended to show that he rode the horse moderately, never going faster than a trot, that at the Bryant place he hitched it to a post, that there was no halter or rope around its foot while in his possession, and that in returning from the Bryant place he rode the horse in a walk until it suddenly fell in the road.   An expert in diseases of horses testified that in his opinion the horse was paralyzed, and that this may have been produced by straining.   There was also evidence that, a day or two before the hiring, the horse had been used in hauling dirt.   Powell also testified that, about a year before, he had hired another horse from Farkas to go to the same place, and rode three or four miles farther than he intended to go, and that when informed of it on his return, Farkas said it was all right, and did not charge him for the extra time or distance.

On this state of facts the trial judge charged the jury, in substance, that if Powell exercised ordinary care in

riding the horse and attending to it while in his pos-
session, it did not make any difference whether he rode·
it beyond the Whitehead place or not; that if Powell.
was not at fault in riding and in his attention to the
horse, he could not be held liable because he went a
greater distance than he had hired the. horse to go,
although it may have been injured by accident or other-
wise without his fault in going this extra distance. The
jury found for the defendant, and the plaintiff made a
motion for a new trial.

We think this charge was error. When Powell hired
the horse from Farkas to go five miles to the White-
head place, he had no right, under his contract, to go
beyond that point without the consent of Farkas; and
when he did go beyond, it was at least a technical con·
version, or a violation of his contract and duty. And
if the horse had been injured while beyond the point to
which he was hired to go, Powell undoubtedly would
have been liable, whether the injury was caused by his
own negligence or by the negligence of others, or even
by accident; unless he was forced to go beyond that
point by circumstances which he could not control.
For example, if a bridge had been washed away, or the
road was impassable and in consequence h̄ had to take
a longer road in order to go to the Whitehead place,
he would then be liable only for his own negligence.
This principle seems to be sustained by the following
authorities: Story on Bailments, §413 *et seq.,* and authori-
ties there cited; Schouler on Bailments, §130, and au-
thorities cited. But the nice question in this case is,
would Powell, after having been guilty of a technical
conversion or violation of his duty and having returned
within the limits of the original hiring, and the horse
then sustained injury without other fault on his part,
be liable ? That would depend, in our opinion, upo
whether the extra ride of six or eight miles to th

ant place and back caused or materially contributed to the accident. If it did, we think he would be liable to the owner. The horse might have been well able to travel the five miles and return, but the six or eight miles extra may have fatigued him to such an extent as to have caused him to stumble and fall, and thus produced the injury. If, however, the extra ride did not cause or materially contribute to the injury, we do not think Powell would be liable, if guilty of no other fault. We can see no good reason to hold the hirer liable for an injury to the horse which occurred, without his fault, after he had returned with it within the limits of his original contract, although he had been guilty of a technical conversion by riding it three miles beyond the point to which it was hired to go, the extra distance not causing or contributing to the injury.

We have been unable to find any case the facts of which are like the facts in this. Nearly all the cases which hold the hirer liable when he has deviated from the terms of his contract, are cases in which he was negligent in fact or wilfully and wantonly misconducted himself, or had overdriven the horse or destroyed or ruined the property while beyond the limits or in the course of deviation from the purpose of the hiring. The cases cited in the brief of counsel for the plaintiff in error were all of this character. See *Mayor, etc. of Columbus* v. *Howard*, 6 *Ga.* 213; *Gorman* v. *Campbell*, 14 *Ga.* 137; *Collins* v. *Hutchins*, 21 *Ga.* 270; *Lewis* v. *McAfee*, 32 *Ga.* 465; *Malone* v. *Robinson*, 77 *Ga.* 719. So likewise were nearly all the cases referred to in Schouler and Story, *supra*. The facts in those cases show that the property was injured or destroyed during the time it was being improperly used, or being used for a different purpose from that for which it was hired.

The question whether this extra ride did or did not cause or materially contribute to the injury, was for

the jury to determine under the evidence and a proper charge by the court; and the court by its charge having eliminated this issue from the case, we think a new trial should be granted.        *Judgment reversed.*