7966, 7970.  SMALL, adm'r, *v.* WILSON, and *vice versa.*

</div>

1. The amendment of the plaintiff's petition in its description of the certificate of stock sued for, and the amendment as to the amount of money for which the stock was pledged, did not change the cause of action, and the court did not err in allowing the amendments.

2-4. Where an administrator lent money of the estate represented by him, and a certificate of stock of a corporation was delivered to him as collateral security for the promissory note given for the loan, and the pledgor afterwards borrowed the certificate for the purpose of using it as collateral security for another loan, agreeing to return it after that purpose had been served, and he refused to return it on demand as agreed, the administrator could maintain bail-trover for the recovery of the certificate.

5. The plaintiff proved his case substantially as alleged, and the trial judge erred in awarding a nonsuit. Certain conclusions stated by the plaintiff in his testimony in his own behalf should have been rejected by the court, but failure to exclude these conclusions will not require a reversal on defendant's cross-bill of exceptions.

DECIDED JULY 26, 1917. REHEARING DENIED SEPTEMBER 19, 1917.

Bail-trover; from city court of Macon—Judge Guerry. September 23, 1916.

*W. D. McNeil,* for plaintiff.

*Hardeman, Jones, Park & Johnston, Harry S. Strozier, T. S. Felder,* for defendant.

GEORGE, J.  Small, as administrator of the estate of Hanson, brought trover against Wilson, and alleged that Wilson was in possession of certain property, to wit, "one hundred shares of Georgia Casualty Company stock, evidenced by certificate No. 33, later changed to certificate No. 166, of the value of $6,000 par," to

which the plaintiff claimed the right of possession by reason of the following facts: In June, 1913, Wilson borrowed of the plaintiff, as administrator aforesaid, the sum of $6,225, and pledged this stock with the plaintiff, as collateral security for the loan; and afterwards borrowed it of the plaintiff for the purpose of using it as collateral security for some other loan, and agreed to return the stock as soon as the purpose for which it was borrowed was served; and, after the purpose for which the stock was borrowed had been served, Wilson, on demand, refused to deliver the property to the plaintiff. The plaintiff made the affidavit authorized by the code for the purpose of having the property seized by the sheriff, and it appears that the defendant gave the bond provided by the statute, and retained possession of the property.

The plaintiff amended his petition by striking 33 as the number of the certificate and inserting in lieu thereof No. 53, and by adding that certificate No. 166 was later converted into certificate No. 172, and was so numbered when demand was made on the defendant therefor. The amendment was allowed, over the objection that it set out a new cause of action, in that the suit as originally brought was "for certain described certificates of stock, while the amendment sought to convert it into an action for other and distinct certificates of stock." The defendant filed exceptions pendente lite, and in his cross-bill of exceptions insists that the court committed error in allowing the amendment. It will be noted that the original suit described the shares of stock as "evidenced by certificate No. 33, later changed to certificate No. 166." The effect of the amendment was to describe the stock as evidenced by No. 53, later changed to certificate No. 166, and still later changed to certificate No. 172. The original petition alleged also that the particular stock, the subject-matter of the litigation, was pledged by the defendant to the plaintiff to secure a certain loan, and that thereafter the defendant borrowed of him the particular stock, for the purpose of using it as collateral for another loan, and agreed to return the stock as soon as that purpose was served.

1. We think the amendment was properly allowed. The trover suit otherwise so identified the property sued for as to make it clear that the amendment did not set out a new and distinct cause of action, but simply corrected a mistake made in the original petition in designating the stock by a wrong number. The allega-

tions of the original petition were sufficient to show that the amendment did not change the identity of the stock or certificate sued for in the first instance, and it was permissible to add further descriptive terms to show the number of the certificate representing the shares of stock at the time of the trial. *Allen* v. *Stephens,* 107 *Ga.* 733 (33 S. E. 651); *Polhill* v. *Brown,* 84 *Ga.* 338 (10 S. E. 921). A mere clerical mistake in describing the certificate of stock, or a failure to give a full and complete description, may be cured by amendment, provided, however, that it is apparent from the two descriptions that in both instances the pleader had in mind the same stock certificate. *King* v. *Wright,* 77 *Ga.* 581; *Hogans* v. *Dixon,* 105 *Ga.* 171 (31 S. E. 422).

The plaintiff further amended his petition by alleging that the amount borrowed by the defendant was $6,250, instead of $6,225, as alleged in the original petition. This amendment was objected to on the ground that it set out a new cause of action, since the original suit was for stock deposited as collateral to one debt described in the petition, and the amended suit was for collateral for an entirely different and distinct debt. The court overruled this objection and allowed the amendment. The defendant excepted pendente lite to this ruling. Surely this amendment was properly allowed. While the precise question here presented was not involved in the case of *Witt* v. *Nesar,* 145 *Ga.* 674 (89 S. E. 747), the decision in that case is in principle controlling upon the exception taken to the allowance of this amendment.

2. After the plaintiff had closed his evidence, the defendant made an oral motion, in the nature of a general demurrer, to dismiss the plaintiff's petition because it set out no cause of action. The court overruled this motion, and the defendant excepted to this ruling and contends that the suit, as disclosed by the amendment, was for shares of stock, and that shares of stock are intangible property incapable of seizure; that the plaintiff's action had become the common-law action of detinue, wherein it is necessary that the specific property described be seized; and therefore that the action was not maintainable. It is undoubtedly true that trover in Georgia embraces the common-law actions of trover, detinue, and replevin. At common law, trover was an action for damages for conversion of personalty; replevin was an action to recover specific chattels unlawfully taken and wrongfully withheld; while

the action of detinue was allowable to recover specific chattels wrongfully retained, though lawfully acquired. In replevin the gist of the action was the wrongful taking of the chattels, in detinue the unlawful detention of the chattels. 3 Bl. Com. 146 et seq; 1 Chitty's Pl. (16 Am. ed.) 181; see also *Mitchell* v. *Georgia & Alabama Ry.,* 111 *Ga.* 760, 762 (36 S. E. 971, 51 L. R. A. 622). In the common-law action of detinue the property sued for must have been tangible, corporeal, personal property, capable of seizure. We think it must be accepted as true that shares of stock, as such, are not chattels; they bear a closer resemblance to choses in action; and, properly speaking, they are merely evidence of property. Shares in a corporation are generally said to be incorporeal personal property. *Greene County* v. *Wright,* 126 *Ga.* 504, 509 (54 S. E. 951); *Oliver* v. *Oliver,* 118 *Ga.* 362 (3) (45 S. E. 232); 7 Words & Phrases, 6662. It was well established at common law that trover would lie for stock in a corporation. All the authorities support this doctrine. An examination of the cases will show that the courts deciding them mean by trover the common-law action of trover,—that is, the action for damages for the conversion of the stock,—and these damages were generally held to be equal to the value of the stock converted. See 38 Cyc. 2012; 28 Am. & Eng. Enc. L. 651, 652, and authorities there cited; Bowers on Conversion (1917), § 21. According to 2 Cook on Corporations, § 576, p. 1585, the doctrine that trover (in its common-law sense) will lie for shares of stock is accepted as sound, except by the courts of Pennsylvania. Attention is called by the author to the decision in Neiler *v.* Kelley, 69 Pa. 403, where it is held that trover will not lie for "shares of stock," but may be maintained for the certificate.

Counsel for the defendant contend that bail-trover in this State is the equivalent of detinue at common law, and that trover, aided by a bail proceeding, can therefore be brought only for tangible, corporeal property. We have no disposition to controvert the assertion that the common-law action of detinue would not lie for the recovery of corporate stock, as distinguished from the certificate evidencing such stock. We recognize that the reasoning in *Hudson* v. *Goff,* 77 *Ga.* 281 (3 S. E. 152), and *McElhannon* v. *Farmers' Alliance Co.,* 95 *Ga.* 670 (22 S. E. 686), would indicate that the suing out by the plaintiff of a bail process in aid

of a trover proceeding converts the trover proceeding into the common-law action of detinue. Perhaps it would be more accurate to say that bail-trover, under the laws of this State, partakes rather of the nature of detinue, and that the specific chattel wrongfully withheld must in such case be so described and be of such a nature as to permit of actual seizure.

The foregoing discussion is beside the point made by the defendant in his cross-bill of exceptions. It will be recalled that, after the plaintiff had closed his case, the defendant submitted his oral motion to dismiss the plaintiff's petition because it set out no cause of action. The question therefore is: Did the petition set out *any* cause of action? The petition as amended may have been susceptible of the interpretation given it by the defendant, but it certainly admits of the construction that the suit was for a certificate of stock. Indeed, words are to be interpreted according to their ordinary meaning. The petition alleged that the defendant was in possession of stock evidenced by a certain certificate. The reference is certainly to the physical evidence of the stock, and not to the intangible and incorporeal thing known as "capital stock." The petition further alleged that this stock had been pledged as collateral security for a loan made by the plaintiff to the defendant, and that the defendant afterwards borrowed it of the plaintiff for a particular purpose. The reference undoubtedly is to the certificate, as distinguished from stock in its technical sense. The amendment identified the particular certificate; and, if the petition and the evidence offered in its support showed a good cause of action for either the stock or the certificate, the court properly overruled the oral motion to dismiss. See, in this connection, Godfrey *v.* Pell, 49 N. Y. Super. Ct. 226, where it is held that the action for conversion will lie even though the plaintiff used the term "shares of stock" and "certificates of stock" interchangeably. The action of trover, aided by bail process, under the law of Georgia, is certainly not less broad than trover at common law.

3. The court granted a nonsuit, and in the main bill of exceptions this is assigned as error. The motion for nonsuit was based upon three grounds: (1) "The evidence shows that the action is for shares of stock, and bail-trover does not lie to recover shares of stock." What we have already said disposes of this contention·

of the defendant, adversely to him. (2) The second ground is that that "under the evidence introduced and the law applicable thereto, there never was a valid pledge of the stock." It is needless to discuss the essentials of a valid pledge. The evidence in this record shows that Small, the administrator, had at one time the physical, manual possession of the certificate of stock described in his suit. Wilson borrowed of Small either the certificate as it existed at the time of the trial, or the writing evidencing the same 100 shares of stock described in the action. We have no doubt that bare possession of a chattel was title upon which the plaintiff could base his action in trover, or detinue, at common law. The doctrine has been somewhat confused in this State, but, as against a wrong-doer, the true rule at common law authorized the recovery of personal property, or damages for its conversion, upon mere possession. Of course, mere possession was not sufficient to defeat the title of the true owner. While Wilson was the owner of the stock pledged to Small, nevertheless Wilson's wrongful detention of the stock, under the evidence in this case, was sufficient to authorize the recovery by Small even as against Wilson. If the defendant borrowed the stock of the plaintiff, who at the time held actual possession of it, as is disclosed by the evidence, the defendant would hardly be in position to dispute the plaintiff's title. There is nothing in *Mitchell* v. *Ga. & Ala. Ry.*, supra, that militates against this position. It was there held by a divided court that mere possession of a chattel wil give a right of action for any interference therewith, but that such possession must be in the plaintiff's own right, and not as agent for another. Even if this is a true interpretation of the law of this State upon this subject, Small was administrator of Hanson's estate. He made a loan out of the proceeds of that estate to Wilson. He took a note payable originally to himself as administrator, or to the estate of Hanson. Later the note was renewed in the name of Mrs. Hanson, as payee, followed by the words, in brackets, "W. E. Small, Adm'r." The original and every renewal note, including the note offered in evidence and payable as indicated, was retained by Small, —that is, was not delivered to Mrs. Hanson. He was liable to the estate, or to the beneficiaries thereof, for money loaned by him to Wilson. The legal title to the stock did not pass to the payee named in the note, because the stock was never indorsed to her.

Small had in his physical possession the stock certificate. He had such an interest in this certificate as will support his action, even under the rule in *Mitchell* v. *Ga. & Ala. Ry.*, supra. In this general connection, attention is called to the well-considered opinion of the English Court of Appeals, in "The Winkfield case," 3 British Ruling Cases, 368. The English court held, that "in an action against a stranger for the loss of goods caused by his negligence, the bailee in possession can recover the value of the goods, although he would have had a good answer to an action by the bailor for damages for the loss of the thing bailed," and over-ruled Claridge *v*. South Stratfordshire Tramway Co., 1 W. B. 422, 61 L. J. Q. B. N. S. 503, 66 L. T. N. S. 655, 56 J. P. 408. After an exhaustive discussion of the English cases, the doctrine is declared, that, at common law, possession of a chattel was title as against a wrong-doer, and that a bailee could recover not because of his special or general interest in the thing bailed, but upon his possession of the thing bailed; that the basis of his recovery was not because he was liable over to the true owner, but, upon first principles, he was liable over because he had the cause of action, by reason of his possession, for the recovery of the thing bailed, or for damages for its conversion. The elaborate notes to this decision in 3 British Ruling Cases, commencing at page 388, very clearly demonstrate that the conception of the dissentient judge in the Georgia case of *Mitchell* v. *Georgia & Alabama Ry.*, supra, was the true conception.

4. The third and last ground upon which the motion to non-suit was predicated is as follows: "Plaintiff failed entirely to show title to the stock sued for." What we have just said above perhaps sufficiently disposes of the last contention made on the part of the defendant. However, it is pertinent to remark that Small's action was not based upon the promissory note secured by the stock certificate. The allegations in his petition with reference to the loan and the note evidencing the same are merely by way of inducement. It made no difference how the loan made by Small to Wilson was evidenced at the time of the bringing of the suit. The certificate of stock was placed in the physical possession of Small for the purpose of securing the debt, and for the purpose of protecting him in his fiduciary capacity as administrator of the estate.

Much stress is laid upon the contents of a letter written by Small to Wilson, and exhibited to Small while on the stand. The letter referred to a particular certificate evidencing the 100 shares of stock described in the trover suit. It stated that this certificate was at the date of the letter held by the Citizens National Bank of Macon, as collateral to a particular note (other than the note given by Wilson to Small as administrator) "which is full amount now due by you for which this stock is collateral." Counsel for the defendant insist that the nonsuit was proper and necessary in view of this letter and the admissions made by Small in connection therewith. Small testified that this letter meant exactly what it said, but in his testimony he explained the meaning as follows: "I meant that was all the stock was behind on the note at that time. That was the full amount of the note he owed. As soon as it was paid, it (the stock) was to go back behind the Hanson note." The testimony of the plaintiff, taken as a whole, clearly indicates that he did not in this letter refer to any indebtedness due by Wilson to himself as administrator, but referred only to the indebtedness of Wilson to the bank. Even if this was a very serious admission, nevertheless, in view of the explanation offered, the issue was for the jury. Without further discussion of the evidence, it is sufficient to say that the plaintiff proved his case substantially as alleged.

5. The cross-bill of exceptions complains of the ruling of the court in admitting certain evidence. This evidence, including the two unsigned writings submitted by the defendant to the plaintiff, and the letter from the defendant to the plaintiff, was properly admitted. However, certain conclusions of the plaintiff, stated in his testimony as a witness in his own behalf, should have been rejected by the court. Failure to exclude the mere conclusions of the plaintiff will not, however, require a reversal of the judgment on the cross-bill of exceptions. It follows from the foregoing that the nonsuit was improperly awarded.

*Judgment reversed on the main bill of exceptions, and affirmed on the cross-bill. Broyles, P. J., and Jenkins, J., concur.*