## 44211. MARYLAND CASUALTY INSURANCE COMPANY
## v. WELCHEL.
### (356 SE2d 877)

MARSHALL, Chief Justice.

This case is here on certiorari. *Maryland Cas. Ins. Co. v. Welchel*, 181 Ga. App. 224 (351 SE2d 645) (1986). Presented for decision are questions concerning the contours of the common-law action of trover and conversion. Also presented for decision are questions concerning the remedy of an insurer against a third party committing a tort against its insured, where the insurer has indemnified the insured for the loss arising from the tort and has become both equitably and contractually subrogated to the insured's right against the tortfeasor, and the tortfeasor — in contravention of the insurer's subrogation rights — has settled the claim with the insured and obtained a general release.

The basic facts of this case are that the appellee Welchel, d/b/a Marietta Wrecker Service, received instructions to tow a truck having transmission trouble to Coursey's Transmissions. However, the driver dispatched by the appellee mistakenly, but in good faith, went to the wrong location and towed to Coursey's a truck insured by the appellant Maryland Casualty Insurance Company. While at Coursey's, this truck was stolen. An automobile proof of loss, which contained a subrogation clause, was executed by the insured. The appellant paid the theft loss, in return for which the insured executed a loan receipt which also contained a subrogation clause. However, the insured subsequently brought suit against the appellee for the loss. This was done without notice to the appellant and without the appellant's consent. The suit was settled, and a consent judgment was rendered. As previously stated, the insured executed a general release.

The appellant then instituted this action, in which recovery was sought against the appellee for conversion of the truck and for tortious interference with the appellant's subrogation rights. A jury trial was convened, but the trial court granted the appellee's motion for directed verdict on the ground that there was no evidence that the theft of the truck was reasonably foreseeable by the appellee, and, therefore, any conversion of the truck by the appellee did not constitute the proximate cause of the theft loss.

On appeal, the Court of Appeals held that, although the trial court did not err in granting the appellee's motion for directed verdict on the conversion claim, the court did err in granting the appellee's motion for directed verdict on the subrogation claim. As to the conversion claim, the Court of Appeals reasoned that, since the appellee did not assert any right of ownership to the truck, it was chargeable with trespass and not conversion, but, in any event, under the evidence the theft was not reasonably foreseeable and, therefore, consti-

tuted an intervening, criminal act insulating the appellee from liability. However, the Court of Appeals held that the appellant's claim against the appellee for tortious interference with its subrogation rights was not dependent upon the appellee's underlying liability in tort for the loss of the truck, since the subrogation rights were acquired by the appellant subsequent to the theft of the truck and since the appellant was suing "for a wrongful violation of *its own* subrogation rights, not as the subrogee of *the owner's* rights." (Emphasis in original.) 181 Ga. App. at p. 226. But, the Court of Appeals affirmed the trial court's denial of the appellant's motion for directed verdict on the subrogation claim, in that the evidence did not demand a finding that the appellee procured the owner's general release and the consent judgment with knowledge of the appellant's subrogation rights. *Held:*

We agree with the Court of Appeals that the trial court did not err in granting the appellee's motion for directed verdict on the appellant's conversion claim, although for reasons different from those given by the Court of Appeals. However, we hold that the subrogation claim was dependent upon the conversion claim, and, for this reason, the trial court was also correct in granting the appellee's motion for directed verdict on the subrogation claim. Consequently, the judgment of the Court of Appeals is affirmed in part and reversed in part.

1. "[T]rover in Georgia embraces the common-law actions of trover, detinue, and replevin. At common law, trover was an action for damages for conversion of personalty; replevin was an action to recover specific chattels unlawfully taken and wrongfully withheld; while the action of detinue was allowable to recover specific chattels wrongfully retained, though lawfully acquired. In replevin the gist of the action was the wrongful taking of the chattels, in detinue the unlawful detention of the chattels. 3 Bl. Com. 146 et seq.; 1 Chitty's Pl. (16 Am. ed.) 181; see also *Mitchell v. Georgia & Alabama Ry.*, 111 Ga. 760, 762 (36 SE 971, 51 L.R.A. 622)." *Small v. Wilson*, 20 Ga. App. 674, 676-677 (93 SE 518) (1917).

"Any unlawful abuse of or damage done to the personal property of another constitutes a trespass for which damages may be recovered." OCGA § 51-10-3. The action of trespass to personalty is "concurrent with" the action of trover and conversion, although the two actions are not "entirely coextensive." 28 EGL 79, Trover & Conversion, § 2 (1985 Rev.). "Trespass will doubtless lie for acts of interference with goods where trover will not . . . . The chief principle in the field of conversion is undoubtedly found in the idea of interference with the dominion which is incident to the general or special ownership of chattels. This conception is entirely different from the idea of damage to the property itself which is inseparable from trespass . . . ." Id.

As recognized by the Court of Appeals in this case: "Conversion consists of ' "an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to his rights; an act of dominion over the personal property of another inconsistent with his rights; or an unauthorized appropriation." *Southern Express Co.. v. Sinclair*, 130 Ga. 372, 373 (60 SE 849).' *Wood v. Frank Graham Co.*, 91 Ga. App. 621, 622 (86 SE2d 691) (1955).

" ' "Any distinct act of dominion wrongfully asserted over another's property in denial of his right, or inconsistent with it, is a conversion. It is unnecessary to show that the defendant applied it to his own use, if he exercised dominion over it in defiance of the owner's right, or in a manner inconsistent with it. It is in law a conversion whether it be for his own or any other's use . . ." ' *James v. Newman*, 73 Ga. App. 79, 80 (3) (35 SE2d 581) (1945). 'Conversion involves the unauthorized assumption and exercise of right of ownership over personalty of another, contrary to the owner's rights (cit.).' *Pelletier v. Schultz*, 157 Ga. App. 64, 65 (276 SE2d 118) (1981). See generally 28 EGL, Trover & Conversion." *Mitzner v. Hyman*, 175 Ga. App. 311, 312 (1) (333 SE2d 182) (1985).

Consequently, in order to be chargeable with conversion, technically it is not necessary that the defendant assert any right of ownership over the property; it is sufficient if the defendant wrongfully assumes dominion over the property inconsistent with the owner's right. See *Farkas v. Powell*, 86 Ga. 800 (13 SE 200) (1891); *Spiers v. Hubbard*, 12 Ga. App. 676 (78 SE 136) (1913).

" 'Any distinct act of dominion wrongfully asserted over one's property in denial of his right or inconsistent with it, is a conversion.' *Rushin v. Tharpe*, 88 Ga. 779, 782 (15 SE 830). 'The action of trover being founded on a conjunct right of property and possession, any act of the defendant, which *negatives, or is inconsistent* with such right, amounts in law to a conversion.' *Liptrot v. Holmes*, 1 Ga. 381, 391.

"It is immaterial that such dominion was exercised in good faith, for 'Whoever meddles with another's property, whether as principal or agent, does so at his peril, and it makes no difference that in doing so he acts in good faith . . .' *Miller & Miller v. Wilson*, 98 Ga. 567, 569 (25 SE 578, 58 ASR 319)." *Lovinger v. Hix Green Buick Co.*, 110 Ga. App. 698, 699 (1) (140 SE2d 83) (1964).

However, we do agree that where, as here, the defendant is chargeable with conversion by reason of the fact that he wrongfully assumed possession of the property and moved it from one location to another where it was stolen by a third party, the defendant's conversion of the property is not the proximate cause of the loss unless the intervening, criminal act was reasonably foreseeable. See OCGA § 51-12-8; *Blakely v. Johnson*, 220 Ga. 572 (140 SE2d 857) (1965).

It is true that in an action for trover and conversion, the defendant may elect to receive a verdict for return of the property, payment for the value of the property, or money damages. OCGA § 44-12-151. However, if the defendant disclaims all title and tenders the property to the plaintiff when he files his answer, together with reasonable hire, the plaintiff is not entitled to a money verdict in the absence of a demand for the property before suit. OCGA § 44-12-153; *Trammell v. Mallory Bros. & Co.*, 115 Ga. 748 (1) (42 SE 62) (1902). In our opinion, the plaintiff may not, by election of remedies, hold the defendant strictly liable for the loss, where the defendant is unable to return the property as a result of a theft of the property by a third party, if the theft was not reasonably foreseeable by the defendant.

We agree with the trial court and the Court of Appeals that there is no evidence here that the intervening, criminal act was reasonably foreseeable.

2. However, we disagree with the Court of Appeals' holding that the appellant's claim against the appellee for tortious interference with its subrogation rights is not dependent upon the appellee's liability for the underlying tort.

To employ an oft-cited metaphorical expression, subrogation places the subrogee in the shoes of the subrogor. Consequently, the rights to which the subrogee succeeds are the same as, and no greater than, those of the subrogor; therefore, the subrogee's rights are subject to any limitations incident to them in the hands of the subrogor, and subject to any defenses that might have been urged against the subrogor. *Bickerstaff v. Ellis*, 204 Ga. 734 (b) (51 SE2d 821) (1949); *Vigilant Ins. Co. v. Bowman*, 128 Ga. App. 872, 874 (198 SE2d 346) (1973); 73 AmJur2d 665, Subrogation, § 106. See also *Southern Nitrogen Co. v. Stevens Shipping Co.*, 114 Ga. App. 581 (151 SE2d 916) (1966).

In *Vigilant Ins. Co. v. Bowman*, supra, the Court of Appeals held that where an insured had been indemnified for a loss by his insurer, and where the tortfeasor's insurer thereafter settled the claim with the insured and obtained a general release with knowledge of the insurer's subrogation rights, since the insurer did not consent to the settlement, its subrogation rights against the tortfeasor were not defeated thereby. In *Unigard Ins. Co. v. Zimmerman's, Inc.*, 151 Ga. App. 394 (259 SE2d 652) (1979), the Court of Appeals held that where an insurer, under the authority of *Vigilant*, brought suit against its insured for breach of a loan-receipt subrogation agreement and against other parties for tortious inducement of the insured to breach such agreement, it would be incongruous to allow the parties inducing the insured's breach of the agreement to benefit from their wrongdoing by asserting the inefficacy of the insured's purported release. However, the question of whether the parties which were allegedly

released were in fact liable to the insured was not argued before the trial court and, therefore, was not addressed by the Court of Appeals. 151 Ga. App. at pp. 396-397 (5). We granted certiorari in *Unigard Ins. Co. v. Zimmerman's, Inc.*, supra, and we approved of the Court of Appeals' application of *Vigilant* in that case, holding, "[i]f defendants here can be proved to be wrongdoers, they cannot hide behind the fact that plaintiff may have some other remedy . . . ." *Allen v. Unigard Ins. Co.*, 245 Ga. 475, 476 (265 SE2d 774) (1980).

Thus, *Unigard* recognizes that the insurance company of the injured party potentially has claims against its insured, the alleged tortfeasor, and the alleged tortfeasor's insurer, when the alleged tortfeasor and its insurer have induced the injured party to breach its subrogation agreement with the injured party's insurer. However, both the Court of Appeals' decision and our decision in *Unigard* recognize that in order to succeed on its claim against the alleged tortfeasor and that party's insurer, the injured party's insurer must prove that the alleged tortfeasor is in fact liable for the loss. Accord *Southern Nitrogen Co. v. Stevens Shipping Co.*, supra. Consequently, since the trial court correctly granted the appellee's motion for directed verdict on the conversion claim, the grant of the appellee's motion for directed verdict on the subrogation claim was likewise correct.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Clarke, P. J., Gregory and Hunt, JJ., who dissent.*

GREGORY, Justice, dissenting.

The majority would relieve Marietta Wrecker Service from liability for loss of the truck on the basis the theft of the truck was not reasonably foreseeable. I do not agree with this view. As between the owner of personal property and one who converts that property, under the circumstances of this case, I believe the converter should be held absolutely liable for loss of the property. The law should require it to be returned or its value paid. Questions of negligence or foreseeability should not affect the outcome.

I am authorized to state that Presiding Justice Clarke and Justice Hunt join in this dissent.

DECIDED JUNE 19, 1987 —
RECONSIDERATION DENIED JULY 9, 1987.

*Harman, Owen, Saunders & Sweeney, Timothy J. Sweeney, Perry A. Phillips,* for appellant.

*Barnes, Browning, Tanksley & Casurella, Thomas J. Browning,*

for appellee.