[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-10815
Non-Argument Calendar
_____

D.C. Docket No. 1:16-cv-00779-ODE

MICHAEL PIERCE,
MICHELLE PIERCE,

                                        Plaintiffs - Appellants,

versus

CLAYTON COUNTY, GEORGIA,
RANDY DUANE BRASHEARS,
Individually and in his official capacity as Detective
employed by Clayton County,
MICHAEL J. REGISTER,
Individually and in his official capacity as Police Chief
of Clayton County,
ROBBIE FREDERICK,
Individually and in his official capacity as Property Crimes
Unit Supervisor of Clayton County Police Department,

                                        Defendants - Appellees,

GRANT KIDD,
Individually and in his official capacity as an Officer
employed by Clayton County,

                                        Defendant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(November 21, 2017)

Before MARCUS, JORDAN, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Michael and Michelle Pierce appeal the district court's dismissal of their 42 U.S.C. § 1983 claim based upon their arrests for theft and forgery involving a stolen vehicle purchased at an auction. They also appeal the district court's denial of their motion to amend their complaint. Upon review of the record and the parties' briefs, we affirm in part, reverse in part, and remand for further proceedings.[1]

**I**

Because we write for the parties, we assume their familiarity with the underlying record and recite only what is necessary to resolve this appeal.

According to their complaint, on July 23, 2015, the Pierces purchased a 2014 Toyota Corolla at an auction from Public Storage, receiving an auction sale receipt

---

[1] The district court's order did not dispose of all of the Pierces' claims. There remains a state law claim of intentional infliction of emotional distress against Officer Grant Kidd. The district court, however, certified its order as a final judgment under Fed. R. Civ. P. 54(b), concluding that there was "no just reason to delay" entry of final judgment until the claims against Officer Kidd were resolved. We conclude that the district court properly certified its order for immediate review under Rule 54(b).

2

and certification of public sale. The following day, a tow truck driver sent by the Pierces to retrieve the car ran the vehicle identification number and contacted the Pierces to tell them that the vehicle was listed as stolen. The Pierces contacted the authorities. A Clayton County Police Department officer took possession of the vehicle, which was towed to the Tara Wrecker impound lot, and told the Pierces that there was a hold on the vehicle.

According to the Pierces, Randy Brashears, a detective for the Clayton County Police Department, removed the vehicle from the list of stolen vehicles. The Pierces then contacted Tara Wrecker to notify the impound lot of their intent to place a lien on the vehicle. Tara Wrecker informed them that the vehicle was no longer listed as stolen. Mrs. Pierce went to the Clayton County Police Department with this information and her documents. The records clerk checked the databases and determined there was no longer a hold on the vehicle. The vehicle was released from Tara Wrecker and towed to the Pierces' place of business.

The Pierces obtained a Certificate of Inspection from the Griffin Police Department, in which a police officer swore that the vehicle was not listed as stolen. The Pierces registered the vehicle, paid for tax and tag, had the title bonded, purchased insurance, and began making improvements to the vehicle.

The following day, Detective Brashears contacted the Pierces to inform them that a mistake had been made in releasing the car. According to the Pierces, they

3

showed Detective Brashears all of their paperwork and described the course of events leading to the release of the vehicle. They allege that he "exhibited agitation and aggression consistent with ill will" toward them during the meeting. The Pierces surrendered the vehicle to the Clayton County Police Department, and the vehicle was removed from their place of business on July 28, 2015.[2]

On August 6, 2015, the Pierces spoke with Detective Brashears to inquire about recovering money they had spent on the vehicle. He became angry, told them to call Captain Brody, and hung up the phone. Captain Brody stated that he would speak with a supervisor and call them back.

At some point, Detective Brashears obtained arrest warrants for Mr. Pierce for theft by taking and for Mrs. Pierce for theft by taking and forgery. The Pierces were arrested on August 6, 2015, the same day they had inquired about recovering money they spent, and remained in custody for two days. They allege that the day after they were released, they were contacted by Clayton County Police Officer Grant Kidd, who offered to have their charges administratively dismissed in exchange for payment of a bribe. In January of 2016, all charges against the Pierces were administratively dismissed because the vehicle was legally purchased at auction and the Department had removed a hold on the vehicle. Officer Kidd was later indicted for soliciting a bribe to dismiss the pending criminal charges.

_____

[2] The vehicle was ultimately sold at an auction in December of 2015.

4

The Pierces asserted claims under 42 U.S.C. § 1983 and Georgia state law against Clayton County, Detective Brashears, Officer Kidd, Michael Register, Clayton County's Police Chief, and Robbie Frederick, Clayton County's Police Department Property Crimes Unit Supervisor. The district court dismissed a number of those claims, and denied the Pierces' motion for leave to amend to add a *Monell* [3]claim for deliberate indifference with respect to the Clayton County Police Department's hiring of Officer Kidd and a cause of action for conversion under Georgia law, determining that both of those claims would be futile. The Pierces appeal the district court's dismissal of their § 1983 malicious prosecution claim, civil conspiracy claim, and claim for attorneys' fees and damages against Detective Brashears, as well as the district court's denial of their motion to amend.

## II

We review *de novo* the district court's grant of a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *See Leib v. Hillsborough Cty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1305 (11th Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a court is required to accept the allegations in a complaint as

---

[3] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

5

true, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

### A

The Pierces argue that the district court improperly dismissed their claim for malicious prosecution against Detective Brashears. "To establish a federal malicious prosecution claim under § 1983, the plaintiff must prove a violation of his Fourth Amendment right to be free from unreasonable *seizures* in addition to the elements of the common law tort of malicious prosecution." *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003) (emphasis in original). "[F]or purposes of a § 1983 malicious prosecution claim, the constituent elements of the common law tort of malicious prosecution included: (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Id.* at 881–82. These are the same elements required under Georgia law for the tort of malicious prosecution. *See Kelly v. Curtis*, 21 F.3d 1544, 1556 (11th Cir. 1994).

"Probable cause to arrest exists where the facts and circumstances within the collective knowledge of the law enforcement officials, of which they had reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that an offense has been or is being committed." *Wilson v.*

*Attaway*, 757 F.2d 1227, 1235 (11th Cir. 1985) (internal citation and quotation marks omitted). "Probable cause issues are to be decided on an objective basis by courts without regard to the subjective beliefs of law enforcement officers, whatever those beliefs may have been." *Craig v. Singletary*, 127 F.3d 1030, 1042 (11th Cir. 1997). "No officer has a duty to prove every element of a crime before making an arrest." *Jordan v. Mosley*, 487 F.3d 1350, 1355 (11th Cir. 2007).

The Pierces have adequately alleged the elements of a malicious prosecution claim. They have asserted that they were arrested under an arrest warrant, that the charges were ultimately administratively discharged, and that they suffered damages as a result. Taking their allegations as true, we cannot conclude at this stage of the proceedings that Detective Brashears had probable cause based on the information available to him. According to allegations, Detective Brashears himself removed the vehicle from the stolen vehicle list in either the Georgia Crime Information Center's records, or the National Crime Information Center's records, or both. The amended complaint also states that Detective Brashears informed the Pierces that the police had "made a mistake" in releasing the vehicle and that there had been a "clerical error." *See* Am. Compl., D.E. 14 ¶ 25.

The Pierces further alleged that while meeting with Detective Brashears, they showed him all of their paperwork and "expressly advised" him of the course of events leading to the release of the vehicle. *See id.* ¶ 27. Additionally, the

7

Pierces asserted that Detective Brashears perjured himself by making misrepresentations and omissions in the arrest warrant affidavits. *Id.* ¶ 35, 36. According to the amended complaint, Detective Brashears knew that, *inter alia*, the Pierces had not removed the vehicle unlawfully, that the documents submitted by the Pierces attesting to the valid purchase of the vehicle at the auction were not fraudulent, and that Mrs. Pierce had not provided fraudulent information to the police department. *See id.* ¶ 35. Likewise, according to the amended complaint, Detective Brashears intentionally and wrongfully failed to disclose, in the application for a warrant, his (or the Police Department's) responsibility for the clerical error releasing the hold on the vehicle and the numerous actions the Pierces allegedly took to verify the status of the vehicle. *See id.* ¶ 36.

Moreover, given these facts as alleged—that Detective Brashears himself had removed the vehicle from the stolen vehicle registry and that he was fully apprised of the Pierces' paperwork and what had transpired—the complaint sufficiently pleads that Detective Brashears acted with malice in seeking the arrest warrants for the Pierces.

**B**

Detective Brashears argues that, even if he did not have probable cause, he is entitled to qualified immunity because he had "arguable" probable cause and did not violate clearly established law. "Qualified immunity offers complete protection

for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kingsland v. City of Miami*, 382 F.3d 1220, 1231 (11th Cir. 2004). "Plainly, an arrest without probable cause violates the right to be free from an unreasonable search under the Fourth Amendment." *Id.* at 1232. Moreover, "falsifying facts to establish probable cause is patently unconstitutional and has been so long before" the Pierces' arrest. *Id.* Viewing the facts in the light most favorable to the Pierces, they have sufficiently alleged a violation of their clearly established Fourth Amendment rights.

"Nevertheless, officers who make an arrest without probable cause are entitled to qualified immunity if there was arguable probable cause for the arrest." *Id.* "Arguable probable cause exists when an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed." *Durruthy v. Pastor*, 351 F.3d 1080, 1089 (11th Cir. 2003) (internal quotation marks omitted). "[W]hat counts for qualified immunity purposes relating to probable cause to arrest is the information known to the defendant officers . . . at the time of their conduct, not the facts known to the plaintiff then or those known to a court later." *Jones v. Cannon*, 174 F.3d 1271, 1283 n.4 (11th Cir. 1999)).

Taking the facts alleged in the Pierces' complaint as true, however, we cannot say at this stage of the proceedings that Detective Brashears had even

arguable probable cause for the Pierces' arrest. The facts alleged by the Pierces support a conclusion that the arrest affidavit included recklessly or deliberately false statements that are material to a finding of arguable probable cause. "Without further factfinding, it is impracticable to conclude that arguable probable cause existed for [the Pierces'] arrest when it is unclear how much of the proffered evidence tending to support a finding of arguable probable cause was manufactured or misrepresented." *Kingsland*, 382 F.3d at 1232. Accordingly, the Pierces' claim for malicious prosecution against Detective Brashears may proceed.

Because the district court's dismissal of the Pierces' claims for civil conspiracy and for attorney's fees and damages was based upon its dismissal of all claims against Detective Brashears, we remand for the district court to address those claims in the first instance.

## III

We review the denial of a motion for leave to amend the complaint on the ground of futility *de novo. See City of Miami v. Wells Fargo & Co.*, 801 F.3d 1258, 1265 (11th Cir. 2015). A proposed amendment is futile when the complaint as amended would not survive a Rule 12(b)(6) motion to dismiss. *See Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999).

10

## A

The Pierces argue that the district court improperly denied their motion for leave to amend to include a state law claim for conversion. We agree.

Georgia codified the common-law action of conversion at O.C.G.A. § 51-10-1. *See Grant v. Newsome*, 411 S.E.2d 796, 797 (Ga. Ct. App. 1991); *Carter v. Butts Cty., Ga.*, 821 F.3d 1310, 1324 (11th Cir. 2016). This statute "authorizes the recovery of damages where a government official, without lawful authority, has temporarily deprived an individual of his or her property." *Grant*, 411 S.E.2d at 798; *Carter*, 821 F.3d at 1324. Conversion consists of "an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to his rights; an act of dominion over the personal property of another inconsistent with his rights; or an unauthorized appropriation." *Maryland Cas. Ins. Co. v. Welchel*, 356 S.E.2d 877, 880 (Ga. 1987).

In stating a claim for conversion under Georgia law, a plaintiff must normally allege: "(1) title to the property or the right of possession, (2) actual possession in the other party, (3) demand for return of the property, and (4) refusal by the other party to return the property." *City of Atlanta v. Hotels.com, L.P.*, 775 S.E.2d 276, 279 (Ga. Ct. App. 2015). Georgia courts have recognized, however, that "demand and refusal are not required where a person comes into possession of the property unlawfully." *Carter*, 821 F.3d at 1324 (citing *Williams v. Nat'l Auto*

11

*Sales, Inc.*, 651 S.E.2d 194, 197 (Ga. Ct. App. 2007)). Additionally, "it is not necessary that the defendant assert any right of ownership over the property" or that "the defendant appl[y] it to his own use." *Welchel*, 356 S.E.2d at 261. "It is in law a conversion whether it be for his own or any other's use…[and] it is sufficient if the defendant wrongfully assumes dominion over the property inconsistent with the owner's right." *Id.*

The district court determined that the Pierces had not made out a prima facie case for conversion and that allowing them to add a claim for conversion would be futile. Specifically, it determined that "no Defendant to the current lawsuit is in possession of the vehicle"[4] and that the Pierces, by their own admission, did not demand return of the vehicle after their release from custody and that no one ever refused to return the vehicle to them.[5]

In our view, the district court applied too narrow a view of possession. The defendants make much of the allegation in the amended complaint that "Plaintiffs then *surrendered* possession of the vehicle to the Clayton County PD," D.E. 14 ¶

---

[4] To the extent that the district court read Georgia law as requiring a defendant to still be in possession of the property at the time of the complaint or lawsuit, it erred. *See* O.C.G.A. § 51-10-1 ("The owner of personalty is entitled to its possession. *Any* deprivation of such possession is a tort for which an action lies.") (emphasis added); *Romano v. Ga. Dept. of Corrections*, 693 S.E.2d 521, 524 (Ga. Ct. App. 2010) ("OCGA § 51-10-1 authorizes recovery of damages when a government official, without lawful authority, deprives an individual of his or her property *on even a temporary basis*.") (emphasis added).

[5] Although unclear in their original motion, the Pierces clarify on appeal that they intended to assert a claim of conversion only against Detective Brashears.

12

29 (emphasis added), arguing that this proves that the Department took possession of the vehicle, as opposed to Detective Brashears, and that the vehicle was given willingly, not taken illegally.

The defendants ignore, however, the allegation that it was Detective Brashears who effected the removal of the vehicle, purporting to act on behalf of and under the authority of the Clayton County Police Department to do so. If it is ultimately proven that Detective Brashears had no legal authority to effect that repossession, as the Pierces have adequately pled in their amended complaint, then the fact that he did not physically repossess the vehicle himself, but instead had the Police Department repossess it under his authority and direction, does not shield him from liability. Detective Brashears cannot lawfully do through the Police Department what he cannot lawfully do as a member of the Department (i.e., if Detective Brashears has no lawful authority to remove the vehicle, then he cannot hide behind the Department's removal of the vehicle on his command, which itself presumes Detective Brashears' authority to do so).

The defendants also ignore certain paragraphs of the amended complaint, which include a statement by Mrs. Pierce that "if ya'll tell me to turn it over, I'll turn it over," and a statement by Detective Brashears saying "Good luck recovering any money from us." *Id*. at ¶ 26, 28. In demanding that the Pierces turn the vehicle over to him, Detective Brashears had the weight, authority, and legitimacy of law

13

enforcement on his side, and the Pierces were not required to physically resist turning the vehicle over to him. It is enough that they protested Brashears' removal of the vehicle and attempted to prove their lawful ownership of the vehicle, *see id*. at ¶ 26, 27, and their "surrendering" the vehicle to the Clayton County Police Department does not foreclose their claim for conversion.

The district court also mistakenly applied the elements of conversion required when a defendant comes into possession of property lawfully (a demand by the plaintiff for return of the property, and a refusal to do so by defendant) without considering the requirements where the taking of the property is unlawful. *See Williams*, 651 S.E.2d at 196-97. The Pierces have pled facts sufficient for a finding that Detective Brashears had no legal authority to dispossess them of their vehicle (e.g., that Detective Brashears knew the Pierces had a legal right to possess the vehicle, that he removed the vehicle from the stolen vehicle registry himself, that he did not have probable cause to arrest the Pierces, etc.).

The defendants nevertheless argue that in order to satisfy the elements of conversion which apply when a defendant comes into possession of property unlawfully, a plaintiff must allege that the defendant "dispose[d] of the property without authority and retain[ed] the proceeds." *Williams*, 651 S.E.2d at 197. The defendants rely on *Williams*, but the court in *Williams* was giving but one example (which applied in that particular case) as to why 'demand and refusal' is not

14

required when a defendant comes into possession of property unlawfully. *See id*. The court did not in any way require these factors for all such situations ("a conversion *may* also be proved by showing…"), nor did the court hold that its two examples were the only ways to prove conversion ("[t]here are *at least* two avenues available to prove conversion") (emphases added). *Id*. at 196, 197. Moreover, the requirement urged by the defendants would directly conflict with the principle established by the Georgia Supreme Court that "[i]t is unnecessary to show that the defendant applied [the property] to his own use." *See Welchel*, 356 S.E.2d at 880. And it would lead to the nonsensical result that a defendant would be liable for conversion if he sold the property which he had unlawfully acquired, yet would not be liable as long as he kept the property for himself. *Williams* neither requires nor suggests such an interpretation.

Because the Pierces have pled facts sufficient to maintain a claim for conversion against Detective Brashears, the district court improperly denied their motion for leave to amend their complaint.

**B**

The Pierces also argue that the district court erred in determining that allowing them to bring a *Monell* claim for deliberate indifference with respect to the hiring of Detective Kidd would be futile. "*Monell* imposes liability on municipalities for deprivations of constitutional rights visited pursuant to

15

municipal policy, whether that policy is officially promulgated or authorized by custom. The official policy or custom must be the moving force of the constitutional violation' in order to establish liability of a government body under § 1983." *Gilmere v. City of Atlanta, Ga.*, 737 F.2d 894, 901 (11th Cir. 1984) (internal quotation marks and citation omitted). But the only claim remaining against Officer Kidd is a state law claim for intentional infliction of emotional distress. Because the Pierces have failed to adequately allege an underlying constitutional violation with respect to Officer Kidd, their *Monell* claim against Clayton County and Police Chief Michael Register fails.

## IV

The district court did not err in denying the Pierces' motion for leave to add a *Monell* claim for intentional infliction of emotional distress, but it erred in denying leave to amend regarding the Pierces' conversion claim. In addition, the Pierces have adequately alleged a § 1983 claim for malicious prosecution, and Detective Brashears is not entitled to qualified immunity at this early stage of the case. Accordingly, we affirm in part and reverse the district court's dismissal of the Pierces' claim for malicious prosecution against Detective Brashears and its denial of leave to amend to add a state law claim for conversion, and remand for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**.

16